First American State Bank, Respondent, v. Aetna Casualty & Surety Company and others, Appellants.

*September 28—October 27, 1964.*

192

For the appellants there were briefs by *Elmer W. Beasley* of Hartford, Connecticut, and *E. L. Everson* of Green Bay, attorneys, and *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay of counsel, and oral argument by *Mr. Beasley* and *Mr. E. L. Everson.*

For the respondent there was a brief by *Smith, Puchner, Tinkham & Smith,* attorneys, and *C. Duane Patterson* of counsel, all of Wausau, and oral argument by *Mr. Patterson.*

BEILFUSS, J.   On this appeal we have determined that the unsigned copies of invoices in question and the written assignments of accounts receivable which these invoice copies purported to represent were neither counterfeited nor forged as to the signature of any person signing in any capacity.

In holding that no forgery as to signature exists in this case, we must decline to follow the lead of the Seventh circuit in *Security Nat. Bank v. Fidelity & Casualty Co.* (1957), 246 Fed. (2d) 582, holding on facts almost identical to ours that unsigned copies of invoices were forged. That case relied on *Quick Service Box Co. v. St. Paul Mercury Indemnity Co.* (7th Cir. 1938), 95 Fed. (2d) 15, for the proposition that a false making might be accomplished by the application of a false signature to a true instrument or a true signature to a false instrument. The *Quick Service Box Case* involved the signature of an employee on a company check in an amount he was not authorized to sign. It was held this constituted a forgery. See also Anno. 41 A. L. R. 229, supplemented 46 A. L. R. 1529, and 51 A. L. R. 568.

It is pointed out in Anno. 52 A. L. R. (2d) 207, 210, that forgery under the coverage of a forgery bond is generally defined at least as broadly as the criminal statutes of the jurisdiction construing the bond. Under our forgery stat-

ute, sec. 943.38, a writing may be forged if it is falsely made or altered. In our view, false making relates to genuineness of execution, *Marteney v. United States* (10th Cir. 1954), 216 Fed. (2d) 760, while alteration may relate to falsity of content. In *Quick Service Box* there was a false making in that the agent's execution purported to be made by authority of one who did not give such authority. The same cannot be said for the *Security Nat. Bank Case*.

*Security Nat. Bank, supra,* also relied on sec. 343.56, Stats. 1953, which provided that assignment of a bill of exchange, promissory note, or other assignable instrument was a subject of forgery. It is difficult to see how an unsigned copy of an invoice could fall within that definition. Subsequent cases from other jurisdictions have rejected *Security Nat. Bank. State Bank v. Maryland Casualty Co.* (8th Cir. 1961), 289 Fed. (2d) 544; *North Carolina Nat. Bank. v. United States Casualty Co.* (4th Cir. 1963), 317 Fed. (2d) 304.

In holding that these copies of invoices were not counterfeited, we decline to follow *Fidelity Trust Co. v. American Surety Co.* (3d Cir. 1959), 268 Fed. (2d) 805, holding on facts similar to ours that unsigned copies of invoices were counterfeited. In that case the court said (p. 807):

"We think that common usage would indicate that counterfeit is something that purports to be something that it is not. And that is just what these spurious invoices were."

This view has been rejected by the Fourth circuit in *First Nat. Bank v. Glens Falls Ins. Co.* (1962), 304 Fed. (2d) 866, and *North Carolina Nat. Bank v. United States Casualty Co.* (1963), 317 Fed. (2d) 304. Those cases construed "counterfeited" to be modified by the phrase "as to the signature." The *North Carolina Nat. Bank Case* goes further by way of dictum (p. 309):

". . . [copies of invoices] having no intrinsic value in themselves and being non-negotiable, are not the usual sub-

jects of counterfeiting or forgery. When they are fictitious only in the sense that they contain an implicit or explicit representation that a valid, collectible, but uncollected, receivable exists, it is very doubtful, whatever writing appeared upon them, they could be held to be the subject of counterfeiting or forgery so long as the writing did not misrepresent their origin."

We are not willing to restrict the counterfeiting coverage of Clause (E) to signatures. However, we consider these writings to be exactly what they purport to be—copies of invoices. That goods covered by the original invoices had been shipped to fill purchase orders was a false representation contained in the body of the invoices and made by delivering the copies to plaintiff. Sischo obtained his loans by false pretenses, not by uttering forged or counterfeited writings.

Defendants also argue that invoices are not "securities, documents or other written instruments," within the meaning of Insuring Clause (E) of the bond, citing *Rockland-Atlas Nat. Bank v. Massachusetts Bonding & Ins. Co.* (1959), 338 Mass. 730, 157 N. E. (2d) 239. That case held that a balance sheet accompanied by a letter of purported certification from a certified public accountant whose signature had been forged thereto was not a document or instrument within the meaning of Clause (E). The Massachusetts court considered "instrument" to be the broadest term in the phrase and defined it as, " 'A writing, made and executed as the expression of some act, contract, or proceeding . . .' "

Under sec. 943.38 (1) (a), Stats., writings whereby legal rights or obligations are created, terminated, or transferred, and those which are commonly relied upon in business or commercial transactions as evidence of debt or property rights, are the subject of forgery. We assume that the bank extended credit on the faith of the false copies of invoices,

an inference which defendants do not dispute. This is evidence *prima facie* that copies of invoices are commonly relied on in business and commercial transactions.

The issue reduced to its simplest terms is whether Clause (E) was intended to cover only those writings which have legal efficacy. We reserve this question for future determination, meanwhile commending it to the attention of the draftsmen of the bond.

In view of our disposition of the coverage issues, there is no need to discuss the issues as to notice of loss and waiver thereof.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.