No. 45,494

STATE OF KANSAS, *Appellee*, v. KENNETH FICK, *Appellant*.

(464 P. 2d 271)

Opinion filed January 24, 1970.

*Otto J. Koerner*, of Wichita, argued the cause, and *G. E. Carnahan*, of Wichita, was with him on the briefs for the appellant.

*James Z. Hernandez*, Deputy County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant, Kenneth Fick, appeals from convictions by a jury of forgery in the second degree (K. S. A. 21-608) and uttering a forged instrument (K. S. A. 21-609).

The controlling question is whether the evidence establishes forgery. Defendant concedes the evidence might convict him of passing an insufficient fund check (K. S. A. 21-554) or of cheating

by false pretense (K. S. A. 21-551), but contends it does not establish the offense of forgery.

The evidence establishes that in the latter part of April 1967 an automobile owned by Darrell D. Wells was broken into and his billfold and chauffeur's license were taken.

On May 12, 1967, defendant, using the name of Darrell D. Wells, opened an account in the Seneca National Bank of Wichita. Defendant executed a signature card in the name of Darrell D. Wells or Linda Wells. He was assigned an account identification number, made a deposit of $25, and was issued a checkbook with the assigned account number printed on the checks. Defendant made no subsequent deposits after May 12, 1967. The account was marked closed on May 17, 1967. During the five day interim the bank account ledger reflected at least twelve entries showing a number of checks, each in the amount of $35 were returned by the bank.

The check which is the subject of this prosecution was executed on May 13, 1967; payable to David's, which was established as David's Westway Store in Wichita. Nancy Cone [Smith], an employee of David's Westway, cashed the check. She testified that the procedure followed in cashing a check involved asking for some identification; then laying the identification next to the check and taking a photograph which was intended to show the check, the identification and the face of the person cashing the check. This was accomplished by the use of a photographic instrument identified as a regiscope.

Nancy Cone [Smith] identified the state's Exhibit 2 as being the regiscope picture, showing the face of defendant, the chauffeur's license of Darrell D. Wells, and the check in question. She further testified that defendant, when asked for identification, presented the chauffeur's license of one Darrell D. Wells and that the only basis on which she cashed the check, submitted by defendant, was the identification in the form of the chauffeur's license. She further testified that when she cashed the check she believed the defendant to be Darrell D. Wells.

The check in question, marked "insufficient funds," was returned to David's Westway.

Darrell D. Wells testified as to the loss of his chauffeur's license and that he applied for and received a duplicate chauffeur's license. While on the witness stand, Wells examined the signature on the

subject check and testified that, although very similar to his, it was, in fact, not his signature. He further testified that the physical description of the driver in the license portion of the regiscope picture and the sequence of numbers on the license reflected therein corresponded with that shown on his duplicate chauffeur's license.

Wells further testified that he had not given permission to sign his name to any check to anyone by the name of Kenneth Fick. He further testified that at one time he had an account at the Seneca National Bank but it had been closed prior to 1967.

The principal contention of defendant on appeal is that, although the evidence may establish his guilt of passing an insufficient or no-fund check under K. S. A. 21-554, it does not establish the offenses of forgery and uttering under 21-608 and 21-609, and, therefore, the trial court erred in overruling his motion to dismiss and discharge at the conclusion of the state's evidence.

While more specific language may be used in particular cases, generally, forgery may be defined as the fraudulent making or alteration of a writing to the prejudice of another man's rights. Three essential elements are generally prescribed: (1) There must be a false writing or alteration of an instrument; (2) the instrument as made must be apparently capable of defrauding; and (3) there must be an intent to defraud. (36 Am. Jur. 2d, Forgery, §§ 1 & 3, pp. 681, 683; 2 Wharton's Criminal Law And Procedure [12th Ed.], § 621, p. 396.)

The terms of our forgery statute (21-608), under which defendant was charged, conform with terminology generally used in statutory and common-law definitions of forgery. (2 Wharton's Criminal Law And Procedure [12th Ed.]), § 621, p. 396; 37 C. J. S., Forgery, § 1, p. 31; 36 Am. Jur. 2d, Forgery, § 6, p. 684.)

The gist of 21-608, pertinent to this case, is:

"Every person who shall forge or counterfeit, or *falsely make* or alter, . . . any . . . *check,* . . . being or *purporting to be drawn* on any . . . bank, . . . by *any other person,* . . . shall upon conviction be adjudged guilty of forgery in the second degree." (Emphasis supplied.)

The offense of uttering under K. S. A. 21-609, as applied to this case, is the exchanging or delivering of a forged instrument, as defined in 21-608, knowing the same to be falsely made or forged.

Defendant argues that the mere use of another's name, under the circumstances of this case, does not constitute forgery. He

says that there are no exclusive rights barring the use of any person's name and the use thereof by another is not unlawful. Defendant concedes that in the event the name of Darrell D. Wells was assumed with the intention to cheat and defraud Wells, such act might be contrary to K. S. A. 21-551 (cheat by false pretense), but he claims it would not constitute forgery. He says there is nothing unlawful in opening a bank account in an assumed name and that when one does so he becomes the owner of that account, irrespective of the name used and only the signature as it appears on the signature card is an authorized signature on that account.

Defendant claims that to be guilty of forgery in this case he must have had in his possession a blank check having thereon the electrical code account number assigned to, and owned by, the real Darrell D. Wells, and then signing the name Darrell D. Wells to such check. He asserts the check passed in the instant case was a genuine instrument, inasmuch as the account upon which it was drawn was actually in existence under the name of Darrell D. Wells, the name he assumed. Thus, defendant claims since the check was returned marked "insufficient funds" rather than "unauthorized signature" he could only be guilty of violating K. S. A. 21-554 (insufficient or no-fund check) under which defendant was not charged.

In summation, the defense of defendant appears to be that he simply used an alias in opening the bank account and the mere fact that he selected the name of Darrell D. Wells, and used identification under that name in presenting the check and a signature similar to that of the real Darrell D. Wells, does not amount to forgery.

In the absence of intent to defraud the position of defendant might be well taken, but such is not the case here. The test is not whether the assumed name is the only authorized signature on the account, but whether the assumed name was adopted with intent to defraud.

An intent to defraud is the gist of the crime of forgery (37 C. J. S., Forgery, § 4, p. 34.)

In our view, defendant falsely made and forged the check. Under the circumstances attendant here, the writing of the Wells's name on the check was false. It purported to be what it was not. Defendant did not innocently assume the name of Wells, but opened the account in that name because he had Wells's chauffeur's license to use as a means of identification. Defendant purported to be someone he was not. He attempted to impersonate Darrell D. Wells.

He made a deposit of $25, but then promptly proceeded to issue checks against the account, each of which was in an amount exceeding $25.. All such conduct was steeped in fraud.

Forgery may be committed by using an assumed or fictitious name in signing an instrument with the intent to defraud. (2 Wharton's Criminal Law And Procedure [12th Ed.], § 630, p. 405.) The question is the purpose for which the name is assumed. The general rule is stated in 36 Am. Jur. 2d, Forgery, § 11, pp. 686, 687:

"The crime of forgery may be committed by the signing of a fictitious or assumed name, provided the instrument is made with intent to defraud. The question of intention to defraud is, however, of vital importance, since a person may rightfully and innocently assume and use a name not his own. For example, a person who signs a name but not his own, but one which he has adopted, using it without the intent to deceive as to the identity of the person signing it, does not commit forgery. . . ."

We find no Kansas forgery case dealing with the precise question presented here. However, it has been considered by federal courts and the courts of other states.

The identical question was before the United States Court of Appeals, Seventh Circuit, in the recent case of *United States v. Ackerman*, 393 F. 2d 121 (1968). There defendant, by a $50 deposit, opened a bank account in the name of a person whose lost drivers's license he had found. As in the case at bar, defendant then proceeded to cash checks greatly exceeding the deposit and was convicted of causing a "falsely made and forged security" to be transported in interstate commerce (18 U. S. C. A. § 2314). There—as here—the defendant Ackerman argued the check was not a forged security, but was a genuine instrument inasmuch as the account, upon which it was drawn, was actually in the name of the person whose driver's license defendant had secured. In the opinion it was stated:

"Defendant argues that no intent to defraud was shown. We disagree. Defendant opened the account at the Ohio bank in the name of Pearson. He used Pearson's lost Illinois driver's license as a means of identification. Defendant purported to be someone he was not. He then made a deposit of $50, but proceeded promptly to issue against that account, eleven checks ranging from $109.84 to $142.44. All such conduct was steeped in fraud..

"In *Hubsch v. United States*, 256 F. 2d 820, 824 (5 Cir., 1958) the Court stated: '* * * [W]here a person not only takes an assumed name but uses that name to designate a fictional person with characteristics, personality and a semblance of identity, the use of the fictitious name as an instrument of

fraud in the impersonation of the fictional person is as much a forgery as though the fictional character was real.' We agree!

"We hold the security (Government Exhibit 9-A) was falsely made and forged security within the meaning of Title 18 U. S. C. § 2314. . . ." (p. 122.)

A forged security is defined in 18 U. S. C. A. § 2314 in essentially the same terms as those used in defining forgery in our K. S. A. 21-608 and 609.

In *Wilson v. State*, 220 Tenn. 565, 421 S. W. 2d 91, the defendant signed a check with his own name but held himself out to be another person by the same name. In sustaining a forgery conviction the Supreme Court of Tennessee said:

". . . It is the law in this State, and in others so far as we know that, 'A person may commit forgery even though . he signs his own name, when his name is the same as that of another person and (1) he signs his name with the intent that the writing shall be received as written by the other person, or (2) impersonates the other person signing an instrument which was to be signed or indorsed by the other person. If, however, there is no intent to impersonate such other person, the offense of forgery is not committed.' . . . ." (p. 568.)

Cases from many states, in support of what has been said, are cited under Sections 629 and 630 in 2 Whartons's Criminal Law And Procedure [12th Ed.], pp. 404, 405.

Defendant claims *State v. Swan*, 60 Kan. 461, 56 Pac. 750, supports his position that since his signature of Darrell D. Wells was authorized by the bank as the signature on the account, he did not commit forgery by signing that name on a check. *Swan* stands for the principle that proof a signature was unauthorized is a necessary element of forgery but the holding does not benefit defendant. He was not authorized to sign the name of the Darrell D. Wells, whom he purported to be, when he signed and presented the check in question. This point was clearly established by the testimony of the real Darrell D. Wells.

Since defendant purported and held himself out to be the Darrell D. Wells, identified by Well's chauffeur's license, when he signed the check in question and presented it to David's Westway, we hold it to be a falsely made and forged check within the meaning of K. S. A. 21-608 and 609.

The evidence is clearly sufficient to establish the necessary elements of forgery and uttering.

During the trial, defendant objected to much of the evidence we have recited and claims it was erroneously admitted because

it tended to prove intent to cheat and defraud under K. S. A. 21-551 with which defendant was not charged.

While intent to defraud is necessary to establish an offense under 21-551, it is not only admissible but necessary to establish forgery under 21-608 and 609. In the recent case of *State v. Wright*, 194 Kan. 271, 398 P. 2d 339, it was stated:

"An essential element of forgery in the second degree under both 21-608 and 21-609, *supra*, is an intent to defraud. . . ." (p. 275.)

See, also, 36 Am. Jur. 2d, Forgery, § 11, p. 686; and 2 Wharton's Criminal Law And Procedure (12th Ed.), § 621, p. 396.

Defendant next complains that he was prejudiced when required to make his motion to dismiss upon conclusion of the state's evidence in the presence of the jury.

The record discloses the following:

"MR. KOERNER: We would like to have a motion outside of the presence of the jury, if we may.

"THE COURT: Make your motion out loud.

"(The court refused to excuse the jury and required counsel to make motion in the presence of the jury.)

"MR. KOERNER: Comes now the defendant and moves to dismiss the charge against the defendant on the basis the State has failed to prove the charge; also, that in our opinion the evidence of the State's indicates this was an authorized signature to an authorized account, and the most which has been proven is it is an insufficient fund check involved—and that is not forgery.

"THE COURT: The motion to dismiss is overruled."

In his brief defendant candidly admits that the incident, standing alone, does not amount to reversible error, but, he argues, the attitude of the trial judge, as demonstrated by this occurrence, prevailed throughout the trial to the extent defendant's substantive rights were affected.

Since evidence was not argued by counsel or commented upon by the court in the presence of the jury, nor reasons given by the trial court for its ruling, we do not believe the occurrence amounted to prejudicial error requiring a reversal. (*State v. Davis*, 48 Kan. 1, 28 Pac. 1092.) However, we point out with emphasis that the procedure followed by the trial court in this regard is not the better practice; such motions should always be presented and ruled upon in the absence of the jury.

We have examined other incidents, with respect to the attitude of the trial judge, pointed out by defendant. They involve, for the most part, rulings on evidence adverse to defendant arising from

defendant's erroneous concept of the elements of forgery. We find nothing approaching reversible error in this regard.

Defendant's claim that he was denied a fair trial, because of the trial judge's attitude, is not supported by the record.

Defendant next complains of the trial court's refusal to submit requested instructions and also contends that instructions given were erroneous. Defendant's basis for his contentions in this regard are premised on his position that intent to cheat and defraud is not an element of forgery and that a signature, which corresponds with a bank account signature card, amounts to an authorized signature and cannot serve as a basis for forgery. The fallacy of defendant's position as to these matters has been fully pointed out in the foregoing discussion. It will suffice to say that we have carefully examined the instructions given and find the elements of forgery and uttering adequately set out and the issues for the jury's determination clearly defined.

Lastly, defendant claims the trial court erred in overruling his motion for a new trial. In this specification, defendant merely reasserts the points which have been discussed and disposed of.

Counsel for defendant has displayed vigor and industry in representing the defendant in the trial of this case and has been diligent in advancing claims of error here. However, our examination of the record compels the conclusion that defendant received a fair trial and that no grounds exist which necessitate a reversal.

The judgment is affirmed.