STATE of Wisconsin, Plaintiff-Respondent,

v.

Scot A. CZARNECKI, Defendant-Appellant.†

Court of Appeals

*No. 99–1985–CR. Submitted on briefs March 10, 2000.—Decided June 7, 2000.*

## 2000 WI App 155

(Also reported in 615 N.W.2d 672.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick Donnelly*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Scot A. Czarnecki appeals from a judgment of conviction for three counts of forgery and one count of uttering a forgery contrary to WIS. STAT. § 943.38(1)(a), (2) (1995–96).[1] He also appeals from an order denying his postconviction motion for a new trial. His first argument challenges the sufficiency of the evidence to support his conviction. He asserts that the State (1) did not prove that he endorsed the checks in a name other than his own and (2) failed to present enough evidence to prove every element of the forgery and uttering a forgery offenses. Additionally, he claims that the circuit court erred by not dismissing a juror for cause. Concluding that sufficient evidence supported Czarnecki's conviction and

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

that the circuit court did not otherwise err, we affirm the judgment and the order.

## SUFFICIENCY OF THE EVIDENCE

### Facts

¶ 2. Czarnecki operated a confidence scam under the business name Dougan Bros., which proclaimed to wholesale the "Lowest Priced Merchandise." He performed his scam by shoplifting items such as razor blades, Advil and pregnancy tests from the pharmacy departments of large retail chains like Wal-Mart and Shopko. Once Czarnecki had enough of these items to repackage them in a box, he would sell the stolen items to small drugstores. After a search warrant was executed upon Czarnecki's home, police recovered over $6000 worth of pharmaceuticals.

¶ 3. Presenting himself as Scot Dougan of Dougan Bros., Czarnecki visited drugstores and took orders for his stolen items. The drugstores paid for their orders with checks made payable to Dougan Bros. Five such checks totaling over $1600 were admitted into evidence. All of these checks were endorsed for deposit by a signature reading "Scot" and followed by an indecipherable scrawl for the surname. The State's handwriting expert was not able to determine whether the indecipherable scrawl was "Dougan" or " Czarnecki." Only one of these checks was not deposited into Czarnecki's personal bank account; that check, which Czarnecki unsuccessfully attempted to deposit into his account, is the basis for the uttering a forgery count.

## Argument

¶ 4. Czarnecki argues that the evidence presented at trial does not prove all the elements of the crimes of forgery and uttering a forgery. More specifically, he claims that the State failed to prove that his endorsements on the checks were unlawful because it was not shown that he signed the checks in a name other than his own. An element of the crimes of forgery and uttering a forgery is that the check must have been falsely made to appear to be *made by another person. See* WIS JI—CRIMINAL 1491, 1492.[2] There are two facets to Czarnecki's argument. First, he asserts that the State presented insufficient evidence to support the jury's guilty verdict because there was no conclusive evidence at trial that the endorsement signature was not his own name. Second, he insists that the use of a fictitious name is a commercially accepted practice, so endorsing the checks with such a name was not a false act. Consequently, the element of the crimes requiring the checks to have been falsely made to appear to be

---

[2] The crimes of forgery and uttering a forgery are defined in WIS. STAT. § 943.38 as follows:

**(1)** Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:

(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; . . . .

. . . .

**(2)** Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony.

799

made by another person was not supported by the evidence.

■

¶ 5. When reviewing the sufficiency of the evidence, we may only reverse if the evidence viewed most favorably to the State and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no jury, acting reasonably, could have found guilt beyond a reasonable doubt. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). We must accept the inference drawn by the jury when one or more inferences may be drawn from the evidence. *See State v. Martinez*, 210 Wis. 2d 396, 410, 563 N.W.2d 922 (Ct. App. 1997).

¶ 6. In response to Czarnecki's first argument, we disagree with his claim that the evidence at trial did not support the facts alleged. To the contrary, we find the evidence sufficient for a reasonable jury to infer that Czarnecki signed the checks as another person. For instance, originals of the checks were exhibits available to the jury. The jury reviewed the checks and was allowed to make its own assessment of the indecipherable surname scrawl. Even though Czarnecki insists that there is no proof that he did not sign "Czarnecki" when endorsing the check, the first letter of the surname scrawl is clear; it is the letter "D." The jury could have easily noted the obvious distinction between the written letters "D" and "C." Furthermore, although the State's handwriting expert could not decipher the surname on the endorsements, this fact is inconsequential because that was not the witness's proclaimed expertise. The expert testified about his comparison of Czarnecki's handwriting sample and the handwriting on the checks. He concluded that the handwriting was the same. When asked about the

indecipherable scrawl in place of the surname, the expert testified that "one of the characteristics within handwriting . . . [is the] tail off on the end of a signature. . . . In some cases that's an indication of genuineness, other cases it may be a form of disguise." We conclude that sufficient evidence supports the jury's inference that Czarnecki signed the checks as another person.

¶ 7. In further support of his challenge to the sufficiency of the evidence, Czarnecki argues that even if he endorsed the checks with the surname "Dougan," there was nothing false or unlawful about these endorsements. Because the check writers knew Czarnecki as Scot Dougan of Dougan Bros., he claims that the check writers' intent for him to cash the checks was fulfilled; therefore, his endorsements were not false. Because the check writers' intent is immaterial to this crime, we dismiss that portion of Czarnecki's contention. The crimes concern Czarnecki's actions and intent, not the victims'.

¶ 8. Inherent in Czarnecki's argument is the claim that the check writers must have relied on his endorsements of the checks to their detriment. This argument was rejected in *State v. Davis*, 105 Wis. 2d 690, 314 N.W.2d 907 (Ct. App. 1981). There, the court held:

> The statute *only requires* that the writing forged is "commonly relied upon in business or commercial transactions as evidence of a debt or property right." The statute *does not* require that the person receiving the writing is relying upon such an instrument. The act of forging the writing done with intent to defraud is the crime.

*Id.* at 698 (quoting WIS. STAT. § 943.38(1) (1979–80)).

¶ 9. The final aspect of Czarnecki's claim is that it was not a false act for him to sign "Scot Dougan" to endorse the checks because he was using his assumed name and not purporting to be someone else. Forgery is committed when one lies about the genuineness of a document. *See id.* at 694. The essence of the forgery crime is an intent to defraud. *See State v. Fick*, 464 P.2d 271, 274 (Kan. 1970). Using a fictitious or assumed name when signing or endorsing a check is not always a forgery. When an assumed name is used for a fraudulent purpose, the act can be a forgery. *See State v. Lampe*, 26 Wis. 2d 646, 650, 133 N.W.2d 349 (1965). To resolve Czarnecki's argument, we must consider two questions. One, were the check endorsements with a fictitious name permissible? And two, were the check endorsements false acts?

¶ 10. Czarnecki's argument is the same as was advanced in *Lampe*. Lampe contended that because he signed a check with an assumed name, Emery Walker, the act was not falsely professed to have been made by Emery Walker, as the forgery statute required, because Lampe was also known by this name. *See id.* The court rejected his claim. In reaching its conclusion, the *Lampe* court adopted a narrow definition of forgery. It held that the offender committed the crime if "the falsely made or altered writing appear[ed] to be the instrument of a person other than the one actually making or altering it." *Id.* The court, like other jurisdictions considering this issue, found that the fact that the assumed name was used with an intent to defraud overrode any acceptable uses for aliases. *See id.*; *Fick*, 464 P.2d at 274 ("The test is . . . whether the assumed name was adopted with intent to defraud."); *Green v. State*, 76 So. 2d 645, 648 (Fla. 1954).

¶ 11. Czarnecki does not contest on appeal that the intent to defraud element of the crime was sufficiently proven at trial. Instead, he asserts that his use of an assumed name is a commercially accepted practice. Supporting his contention, he points out that the Uniform Commercial Code permits one to endorse a check which is "payable to a holder under a name that is not the name of the holder." WIS. STAT. § 403.204(4) (1997–98) (adopting the Uniform Commercial Code's provision for endorsements of negotiable instruments). Indeed, a person may adopt any name he or she chooses, so long as it is used for an honest purpose. If there was an absence of facts supporting the intent to defraud here, Czarnecki's position might be well taken, but such is not the case. Under the present facts, Czarnecki's check endorsements using an assumed name were not permissible because they were done with a fraudulent intent.

¶ 12. Regarding the second question raised by Czarnecki's argument, in our view he falsely made and forged the checks. Under the circumstances, Czarnecki did not have a legitimate purpose for using his assumed name to endorse the checks. He received the checks from the drugstores as part of his scheme to get the stores to believe that the total transaction was legitimate. The drugstores' checks gave Czarnecki an advantage—he now had cash in hand for the items he had stolen. "Evidence that the advantage which the instrument, if genuine, would have given has been obtained . . . sufficiently shows an intent to defraud." *Davis*, 105 Wis. 2d at 697 (citation omitted). Because Czarnecki intended to defraud the drugstores, his actions, including endorsing the checks under an assumed name, served a fraudulent purpose. "[T]he use of an assumed name may be a forgery if done for a

fraudulent purpose." *Lampe*, 26 Wis. 2d at 650. Because Czarnecki adopted his assumed name to further his confidence scam, the purpose the assumed name served was to avoid responsibility for his illegal acts by hindering and delaying his identification once the scam was revealed. Using an assumed name to endorse the checks was a false act because it purported to be what it was not.

¶ 13. We also apply this reasoning to uphold Czarnecki's conviction for uttering a forgery even though that crime does not contain an intent to defraud element. *See State v. Shea*, 221 Wis. 2d 418, 429, 585 N.W.2d 662 (Ct. App.), *review denied*, 222 Wis. 2d 674, 589 N.W.2d 629 (Wis. Dec. 8, 1998) (No. 97–2345–CR). As we have discussed above, any permissible use for Czarnecki's assumed name is overridden by the fact that he knew he was performing a false act when signing the check endorsements. Under the facts of this case, the uttering count stems from a forged check the bank refused to honor, but other than that, the circumstances of Czarnecki's endorsement of the check were the same as those charged under the forgery counts. When Czarnecki presented the check for deposit into his account, he took another step in furtherance of his plan to use the check as a means to defraud. Czarnecki was preparing to commit a fraud when he presented the check as genuine to his bank, and because his actions were to serve this fraudulent purpose, we determine that the use of the assumed name was impermissible and constituted a false act, which satisfies the crime of uttering a forgery. In brief, the evidence adequately proves that the checks were falsely made to appear as though another person endorsed them. We conclude that sufficient evidence

was presented to support the convictions on both counts—forgery and uttering a forgery.

## JUROR BIAS

¶ 14. Czarnecki also contends that the circuit court erred when it refused to strike a juror for cause. Because the juror expressed a belief that police officers would not lie under oath and were more credible than average citizens, the juror demonstrated subjective and objective bias, Czarnecki asserts.

¶ 15. During voir dire, the prospective juror in question confessed to having a good friend who was a police officer in the City of Elkhorn Police Department, a police department not involved with the case. In response to the court's query, the juror claimed to believe that police officers were more credible than average citizens because they were involved with the law. Immediately thereafter, the juror clarified that he would still be willing to listen to witnesses for both sides of the case.

¶ 16. During defense counsel's follow-up questioning, the juror clarified his earlier comment about police officers' credibility. He explained that he did not mean to say that police officers were more credible, but that they knew more about the law. This exchange followed:

> [Defense counsel]: Do you think that an officer might lie on the stand?
>
> [Juror]: No.
>
> [Defense counsel]: Do you feel that another witness who wasn't a police officer might lie on the stand in a jury trial?
>
> [Juror]: Maybe.

[Defense counsel]: So do you feel that an officer's testimony would be more credible than someone who was not an officer of the law?

[Juror]: Yes, probably.

¶ 17. This concluded defense counsel's voir dire of the juror. Counsel then informed the court that he objected to that prospective juror's presence on the panel. The court determined that the juror was not biased because he confessed he initially misunderstood the credibility question and expressed the ability to keep an open mind about the case's witnesses. Czarnecki then removed the juror with one of his peremptory challenges. He now argues the juror should have been removed for cause.

¶ 18. Juror bias may be evidenced in three ways. A juror can show statutory, subjective or objective bias. *See State v. James H. Oswald*, 2000 WI App 3, ¶ 4, 232 Wis. 2d 103, 606 N.W.2d 238, *review denied*, 233 Wis. 2d 83, 609 N.W.2d 473 (Wis. Feb. 22, 2000). "Subjective bias refers to the prospective juror's state of mind." *Id.* "A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." *State v. Theodore Oswald*, 2000 WI App 2, ¶ 19, 232 Wis. 2d 62, 606 N.W.2d 207, *review denied*, 233 Wis. 2d 83, 609 N.W.2d 473 (Wis. Feb. 22, 2000). Objective bias exists when the prospective juror's relationship to the case is such that no reasonable person in the same position could possibly be impartial even though he or she desires to set aside any bias. *See James H. Oswald*, 2000 WI App 3 at ¶ 4.

¶ 19. Our review of a circuit court's determination on both the subjective and objective bias is deferential. *See id.* at ¶ 5. With respect to subjective bias, the recent decisions "nail down the proposition that 'questions as to a prospective juror's sincere willingness to set aside bias should be largely left to the circuit court's discretion.' " *Id.* at ¶ 6 (quoting *State v. Ferron*, 219 Wis. 2d 481, 501, 579 N.W.2d 654 (1998)). The circuit court is charged with not only considering what the prospective juror says but also with viewing the prospective juror's manner and body language. *See id.* Thus, in reviewing the circuit court's determination of subjective bias, "we do not focus on particular, isolated words the juror used. Rather, we look at the record as a whole, using a very deferential lens, to determine if it supports the circuit court's conclusion." *Id.*

¶ 20. "[E]xclusion of a juror for objective bias requires a direct, critical, personal connection between the individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror's intractable negative attitude toward the justice system in general." *Id.* at ¶ 8. The deference afforded the circuit court's determination of objective bias is slightly less than that applicable to a determination of subjective bias because the conclusion of whether the facts add up to objective bias is intertwined with the factual findings. *See id.* at ¶ 5.

¶ 21. Czarnecki argues that the juror should have been removed for cause because the juror's answers gave an appearance of bias and he said that he "probably" would find police officers' testimony more credible. To the extent Czarnecki is arguing that the

807

juror was objectively biased, we easily reject that notion.

¶ 22. Czarnecki compares this juror to the one found to be biased in *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999). Assuming arguendo that the prospective juror strongly held the belief that police officers were more credible, there is an obvious distinction between the *Faucher* juror and the one in this case. Here, the testifying officer's credibility was not a key issue in this case. In fact, the police officer's credibility was never brought into question. The officer testified about executing the search warrant on Czarnecki's home and finding over $6000 worth of pharmaceuticals there. Unlike the *Faucher* juror, the juror in this case did not have a strongly held opinion about the case's key witness. He did not even know the testifying police officer. It was not error for the court to refuse to strike the juror for objective bias. *See James H. Oswald*, 2000 WI App 3 at ¶ 21 (jurors not objectively biased because experience as an immigration officer and familial relationship to a police officer did not create a direct, personal connection to a dispositive issue in the case); *Theodore Oswald*, 2000 WI App 2 at ¶¶ 29–32 (jurors not objectively biased because opinions of guilt did not bear on the coercion defense strategy).

¶ 23. With respect to whether the prospective juror was subjectively biased, we determine that Czarnecki focuses exclusively on the juror's last word, "probably," while ignoring the rest of the juror's voir dire testimony. Looking at the entire voir dire colloquy, it is clear that the juror equivocated in response to whether he presumed police officers were more credible witnesses. He stated twice that he did not believe police officers in general were more credible, but he thought

they knew more about the law. The court heard the juror's conflicting statements and concluded that he was not biased and would keep an open mind. The circuit court was in a better position to determine if the juror was sincerely willing to put aside his opinion and consider all the witnesses' testimony equally. It found that the juror could do so. That finding is not clearly erroneous.

*By the Court.*—Judgment and order affirmed.