STATE of Wisconsin, Plaintiff-Respondent,

v.

Elizabeth MATA,† Defendant-Appellant.

Court of Appeals

*No. 00–2791–CR. Submitted on briefs April 20, 2001.—Decided June 6, 2001.*

2001 WI App 184

(Also reported in 632 N.W.2d 872.)

† Petition to review denied 8-27-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles D. Larson* of *Seymour, Kremer, Nommensen, Morrissy & Koch, L.L.P.*, Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William C. Wolford*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Elizabeth Mata appeals from a judgment of conviction for the crime of forgery contrary to Wis. Stat. § 943.38(1)(a) (1993–94)[1] and from an order denying her motion for postconviction relief. On appeal, Mata argues that the trial court accepted her plea without a factual basis, claiming that the underlying facts of her case do not constitute the crime of forgery. In addition, Mata argues that her ten-year prison sentence is unduly harsh. We do not find Mata's arguments to be persuasive; we affirm the trial court's judgment of conviction and its order denying Mata's motion for postconviction relief.

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

## Facts

¶ 2. At her postconviction motion hearing on September 11, 2000, Mata testified that she moved to Wisconsin from Texas in 1990 to get away from an abusive husband. While in Wisconsin, Mata claimed that she used the name and identity of her sister in order to hide her whereabouts from her husband. Mata obtained false identification, rented an apartment, opened a bank account and wrote checks under her sister's name. Eventually, Mata began using alcohol and drugs. Over the next six to eight years, Mata assumed several different aliases. When she assumed an alias, she would represent herself and live her life under the assumed name. It became her pattern to write bad checks under an alias until she or the bank would close her account. She would then assume a new identity and open a new account. Mata testified that it was not her intention to write bad checks when she opened the first two accounts under aliases. However, Mata also testified that she *planned* to write bad checks the third time she opened an account under an alias.

¶ 3. Apparently Mata attempted to repay some of the bad checks, but did not repay all of them before being arrested and charged in Illinois, Racine County, Wisconsin and eventually Walworth County, Wisconsin. On January 27, 1997, the Walworth County District Attorney filed the criminal complaint that is the basis of this appeal charging Mata with thirty-seven counts of forgery, contrary to WIS. STAT. § 943.38(1)(a). Each count was based on an individual check that Mata had written and which was returned for insufficient funds. On February 24, 1997, Mata waived the preliminary hearing.

¶ 4. On June 3, 1999, Mata pled guilty to thirty-seven counts of forgery pursuant to a plea agreement

4

under which the State agreed to cap its sentencing recommendation at ten years. The trial court determined that Mata had freely and voluntarily tendered her pleas:

THE COURT: All right. I believe that the defendant has freely, voluntarily tendered her plea. With respect to a *factual basis* ... what was the pattern the defendant was going through here?

[ASSISTANT DISTRICT ATTORNEY]: According to the confession she made to the police on January 6 of 1997, she was obtaining false Social Security cards, ID cards and licenses in other names, all of which are listed on the criminal complaint. She would then open up bank accounts in those false names, obtain checks and then cash them around the area. And in the criminal complaint are listed out all 37 checks, their numbers, how much they were written for, in what name, and the location of where they were written.

THE COURT: Why is this a felony and why not just bad checks as a misdemeanor?

[ASSISTANT DISTRICT ATTORNEY]: Because [Mata] never—it's not an issue of worthless checks, it's an issue of she never intended—*she intended to defraud.* She opened up checking accounts in fictitious names. It's not like these were like, for example, a person going by both her maiden name and her married name. These were fictitious names. She fraudulently obtained identification, fraudulently opened up accounts having no intention of ever probably being caught or having any money in those accounts to cover all of the checks she was writing. Therefore, it's with intent to defraud, and with the fictitious names and everything, it's falsely creating legal rights and obligations.

THE COURT: These occurred in '96. Has Ms. Mata been absent from the country?

5

[ASSISTANT DISTRICT ATTORNEY]: It was originally filed, as you stated, in I think February of '97. She failed to appear in July of '97. Next time we heard of her she was in custody in McHenry County, Illinois. That was December of '98. We did a detainer, and it looks like the first time she appeared here again was April of '99.

THE COURT: So she's been absent from the state either because she was incarcerated or just gone then.

[ASSISTANT DISTRICT ATTORNEY]: Right.

THE COURT: What's the source of all these read-ins? Same pattern?

[ASSISTANT DISTRICT ATTORNEY]: Same pattern. (Emphasis added.)

The trial court then found that a factual basis existed for Mata's pleas:

THE COURT: Ms. Karls [Mata's Attorney], do you believe there's a factual basis for these charges?

MS. KARLS: Yes, Your Honor.

THE COURT: Ms. Mata, do you understand what the District Attorney has said? *You apparently opened a checking account, obtained checks, then wrote the checks using false ID and pocketing the money.* Forgery. Do you understand that?

[MATA]: Yes.

THE COURT: Forgery is committed by a person who, first, deals with bank checks such as these are, legal rights and obligations are created by them, then you make them or altering a check or the endorsement so as to appear to have been made by another person with authority. *You used different names and never intended to put any money in that account. Hence, that element.*

6

*And, finally, with intent to defraud. You had no intention that they be paid, as I understand it. Do you understand that?*

[MATA]: Yes.

THE COURT: *I believe there's a factual basis for the 37 counts, find the defendant guilty, enter judgments of conviction.* (Emphasis added.)

Finally, the court addressed the 187 read-in counts:

THE COURT: [Ms. Mata do you understand that] the 187 checks that you wrote follow the same pattern as the checks that you're charged with on the 37. Do you understand that?

[MATA]: Yeah.

THE COURT: I believe there's a factual basis for the charge, I believe the defendant understands the facts and the charges and the elements, find the defendant guilty, enter a judgment of conviction on the 37 counts. We'll treat the balance of the charges as read-ins at the final hearing.

. . . .

THE COURT: Again these read-ins are to be treated as read-ins for all purposes including jeopardy, penalty and restitution as I understand it. Any objection to those three purposes, Ms. Karls?

MS. KARLS: No, Your Honor.

¶ 5. On July 29, 1999, the trial court sentenced Mata to ten years in the Wisconsin state prison system on count one. The court withheld sentence on the remaining counts, placing Mata on probation for twenty years. On May 15, 2000, Mata filed a motion for postconviction relief. It stated that there was not a

7

factual basis for her guilty pleas, that she had had ineffective assistance of counsel, and that she should be granted a sentence modification. Mata later abandoned the ineffective assistance of counsel claim.

¶ 6. On September 11, 2000, after hearing testimony and argument on the plea withdrawal and sentence modification issues, the trial court denied Mata's motion. Mata now appeals the judgment of conviction and order denying postconviction relief. The heart of Mata's argument on appeal is that she assumed each of the "false" names to replace her own identity and, therefore, none of the acts underlying the charges purported to be the act of anyone but herself. She argues that issuing worthless checks "appears to be the real conduct the State seeks to punish." She contends that the trial court's factual findings did not constitute forgery, the crime to which she pled.

¶ 7. Secondly, Mata argues that her sentence is unduly harsh because she was overcharged and that the nature of the conduct to be punished amounted to the issuance of worthless checks, not forgery. She claims that the trial court did not properly weigh the sentencing factors and, as a result, the sentence of ten years in prison was "not a logical conclusion a reasonable judge would reach, and therefore was an erroneous exercise of discretion."

### Law

¶ 8. WISCONSIN STAT. § 943.38(1)(a) states:

**Forgery. (1)** Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:

8

(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights . . . .

## Analysis

¶ 9. First, we address Mata's challenge to the factual basis for her pleas. We will only reverse a trial court's determination that there was a sufficient factual basis for accepting a plea if that finding was clearly erroneous. *State v. West*, 214 Wis. 2d 468, 474–75, 571 N.W.2d 196 (Ct. App. 1997). Here, the trial court's finding of a factual basis for accepting Mata's pleas was not clearly erroneous. In fact, the trial court carefully and properly made its finding. In so doing, the trial court explained:

Forgery is committed by a person who, first, deals with bank checks such as these are, legal rights and obligations are created by them, then you [alter] a check or the endorsement so as to appear to have been made by another person with authority. You used different names and never intended to put any money in that account. Hence, that element. And, finally, with intent to defraud. You had no intention that they be paid . . . .

. . . .

I believe there's a factual basis for the 37 counts, find the defendant guilty, [and] enter judgments of conviction.

¶ 10. Mata argues that the trial court was erroneous in finding a factual basis for her forgery pleas because she contends that her conduct did not rise to

9

the level of forgery. Mata claims that her use of aliases when opening her various bank accounts and her issuance of checks from these accounts under the various aliases did not violate the forgery statute because they were not "purporting to be that of another" under the statute. Mata goes into a lengthy discussion about whether to apply the broad or narrow definitions of this element of forgery and points to the different rules (broad and narrow) that have emerged from other jurisdictions. Mata's discussion on this point is academic because we recently addressed this very issue in *State v. Czarnecki*, 2000 WI App 155, 237 Wis. 2d 794, 615 N.W.2d 672, *review denied*, 237 Wis. 2d 260, 618 N.W.2d 750 (Wis. Aug. 29, 2000) (No. 99–1985–CR).

¶ 11. In *Czarnecki*, the defendant sold stolen goods to small drugstores under the business name of Dougan Brothers, and he falsely represented himself to be Scot Dougan. *Id.* at ¶¶ 2–3. He obtained checks in the name of that alias and then endorsed the checks under that alias. *Id.* He argued that there was nothing false about the endorsements because the check writers knew him under his alias and intended him to cash the checks. *Id.* at ¶ 7. We disagreed. We held that if the use of an alias was part of a fraudulent scheme, the "purporting to be that of another" element of the statute was satisfied. *Id.* at ¶ 11.

██

¶ 12. The same is true here. Although Mata claimed an innocent reason for the use of her aliases (i.e., fear of her husband), the fact remains that she also used the aliases as a means of financially benefiting from issuing checks she knew could not be covered because the account they were drawn from had insufficient funds. And she did this time and again. She pled to 37 counts of forgery; 187 counts were read in. Each

and every count was based on a fraudulently issued check signed under an alias. Mata's conduct involved more than the crime of issuing worthless checks—she passed herself off under an alias as part of a fraudulent scheme to obtain money via the issuance of checks from an account she knew to have insufficient funds. That is the crux of forgery. Mata pled to forgery and the trial court, based on its finding of a factual basis, properly accepted Mata's forgery pleas.[2]

¶ 13. We now consider Mata's claim that the sentencing court misused its discretion in refusing to modify her sentence. We review a trial court's conclusion that a sentence it imposed was not unduly harsh and unconscionable under an erroneous exercise of discretion standard. *State v. Giebel*, 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995). In conducting this review, we acknowledge that there is a strong public policy against any interference with the sentencing discretion of the court and there is an equally strong presumption that the sentencing court acted reasonably. *State v. Perez*, 170 Wis. 2d 130, 142, 487 N.W.2d 630 (Ct. App. 1992). The burden is on the defendant to show some unreasonable or unjustified basis for the sentence imposed. *Id.*

---

[2] In the context of a negotiated plea, a trial court need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 645–46, 579 N.W.2d 698 (1998). However, we do not believe it necessary to turn to this rule here because the trial court did go to some length to determine whether there was a factual basis for Mata's negotiated plea.

¶ 14. Mata does not carry her burden of showing that the basis for the sentence imposed was unreasonable or unjustified. Instead, Mata simply renews her argument that there was not a factual basis for her pleas and therefore she should have been punished for the crime of issuing worthless checks and not forgery. We have established that the trial court made a proper finding of a factual basis for Mata's pleas to thirty-seven counts of forgery. Mata's exposure for each count was ten years. The trial court sentenced Mata to ten years in prison on count one and withheld sentence on the remaining thirty-six counts, placing Mata on probation for twenty years. We cannot say that the trial court's imposition of ten years is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *State v. Peters*, 192 Wis. 2d 674, 698, 534 N.W.2d 867 (Ct. App. 1995). We therefore affirm the sentence.

*By the Court.*—Judgment and order affirmed.