STATE of Wisconsin, Plaintiff-Appellant,

v.

Eileen M. ENTRINGER, Defendant-Respondent.

Court of Appeals

*No. 00–2568–CR. Submitted on briefs April 16, 2001.—Decided June 19, 2001.*

2001 WI App 157

(Also reported in 631 N.W.2d 651.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Jeffrey J. Kassel*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William E. Schmaal*, assistant state public defender, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The State appeals an order dismissing one count of uttering a forged writing, contrary to WIS. STAT. § 943.38(2).[1] The issue is whether a person can falsely make a postal money order by writing in the name of someone else as the payer. We hold that the answer is no and therefore affirm.

## BACKGROUND

¶ 2. A Door County sheriff's deputy stopped Eileen Entringer for speeding. When the deputy asked Entringer for identification, she stated that she did not have any. The deputy asked for her name and Entringer said that her name was Mary Ann Jandrin. The

---

[1] All references to the Wisconsin statutes are to the 1999–2000 version unless otherwise noted.

deputy then issued her a ticket. Jandrin is Entringer's mother.

¶ 3. Entringer then purchased a $25 postal money order. She printed "Mary Ann T. Jandrin" in the space provided for the payer's name along with a ticket number that corresponded to the speeding ticket. She then sent the money order to the Door County Clerk of Court.[2]

¶ 4. When Jandrin discovered that a ticket had been issued in her name, she contacted the district attorney. Entringer was subsequently charged with uttering a forged document and obstructing an officer.

¶ 5. At the preliminary hearing, the circuit court determined that probable cause did not exist for uttering a forged document and dismissed the charge. The State appealed.

### STANDARD OF REVIEW

¶ 6. This appeal requires us to interpret WIS. STAT. § 943.38(2). The proper interpretation and application of a statute are questions of law that we review independently. *State v. Shea*, 221 Wis. 2d 418, 425, 585 N.W.2d 662 (Ct. App. 1998). When the principal facts and inferences are undisputed, the appellate court may review the factual record and decide as a matter of law whether the evidence establishes probable cause that a crime has been committed and that the defendant has probably committed it. *State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981).

---

[2] The Door County Clerk of Court testified that the office accepts postal money orders regardless of who is listed as the payor. Money orders that are blank are even accepted.

## DISCUSSION

¶ 7. The issue on appeal is whether a person can falsely make a postal money order by writing in the name of someone else as the payer. We conclude that writing in the name of someone else as a payer does not affect the genuineness of the money order itself.

██

¶ 8. WISCONSIN STAT. § 943.38 provides in relevant part:

> **Forgery.** (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C felony:
>
> (a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights . . . .
>
> . . . .
>
> **(2)** Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class C felony.

There are four statutory elements of the offense of uttering a forged writing under WIS. STAT. § 943.38(2): (1) the writing was one by which legal rights or obligations are created or transferred; (2) the writing was falsely made to appear to be made by another person; (3) the defendant uttered the writing as genuine; and (4) the defendant knew the writing was falsely made.

*State v. Kurzawa*, 180 Wis. 2d 502, 525–26 n.15, 509 N.W.2d 712 (1994) (quoting WIS JI—CRIMINAL 1492). Our resolution of this appeal focuses on the second element.[3]

¶ 9. The State argues that a money order is falsely made when a person prints someone else's name on it to further a fraudulent scheme. Entringer argues that WIS. STAT. § 943.38(2) only applies to falsehoods that materially affect the document's legal efficacy.[4] She contends that printing her mother's name on the money order is not a falsehood affecting the money order's legal efficacy. The State responds by agreeing that the falsehood must be material, but disagreeing that the materiality must affect the document's efficacy. According to the State, it was enough that the falsehood was material to Entringer's scheme to get out of the ticket. We disagree with the State.

██

¶ 10. The forgery statutes are designed to safeguard confidence in the genuineness of documents relied upon in commercial and business activity. *Little v. State*, 85 Wis. 2d 558, 562, 271 N.W.2d 105 (1978). From this proposition, Wisconsin, as most jurisdictions, requires that a false making must relate to the genuineness of execution of a document, not to the genuineness of its contents.

---

[3] The State additionally argues that probable cause exists for each element of WIS. STAT. § 943.38(2). Our resolution of the second element is dispositive of the appeal. Therefore, we do not address these other arguments.

[4] Entringer additionally argues that federal law bars a state prosecution for forgery of a United States Postal money order. Because our resolution of the previous issue is dispositive, we do not address this issue.

¶ 11. In *First Am. State Bank v. Aetna Cas. & Surety Co.*, 25 Wis. 2d 190, 130 N.W.2d 824 (1964), our supreme court examined copies of unsigned fraudulent invoices that had been used to secure credit at a bank. The court declined to follow a seventh circuit case and found more persuasive a line of cases from the fourth circuit which held: "it is very doubtful, whatever writing appeared upon them, they could be held to be the subject of . . . forgery so long as the writing did not misrepresent their origin." *Id.* at 195–96 (quoted source omitted). The point was that the credit was obtained by false pretenses, not by uttering forged writings. *Id.* at 196. The court held that "false making relates to genuineness of execution . . . ." *Id.* at 194–95.

¶ 12. This point was driven home later in *State v. Davis*, 105 Wis. 2d 690, 694, 314 N.W.2d 907 (Ct. App. 1981), where the court approvingly cited Professor LaFave: "Forgery requires a lie relating to the genuineness of a document." WAYNE R. LAFAVE and AUSTIN W. S COTT, Jr., *Handbook on Criminal Law*, § 90, at 671 (1972).[5]

¶ 13. Perkins makes the same point:

> It is an indispensable requirement of forgery that the writing be false. It may have been false in its inception or may have been made so by subsequent tampering with what was originally genuine; but it must be a false writing. In this connection it is

---

[5] LaFave explained what is meant by genuineness of a document: a "foreman who pads the time-roll by crediting himself with working more hours than he actually has worked does not commit forgery, since his lie relates to something other than the genuineness of the time-roll." WAYNE R. LAFAVE and AUSTIN W. S COTT, JR., *Substantive Criminal Law*, § 8.7, at 406–07 (1986) (footnote omitted).

essential to distinguish between a false instrument and false statements in an instrument.

ROLLIN M. PERKINS, *Perkins on Criminal Law*, ch. 4, § 8 at 345 (2d ed. 1969). Perkins cites a Colorado case that explains the distinction as well as any case: "This writing is what it purports to be—a true and genuine instrument, although it contains false statements. . . . A false statement of fact in an instrument which is itself genuine, by which another person is deceived and defrauded, is not forgery." *DeRose v. People*, 171 P. 359, 360 (Colo. 1918).

¶ 14. Treatises are in accord. " 'Falsely' . . . does not refer to the contents or tenor of the writing or to the facts stated therein, but implies that the paper or writing is not genuine, that it is in itself false or counterfeit." 36 AM. JUR. 2D *Forgery* § 9 (2001).

> Forgery cannot be committed by the making of a genuine instrument, although the statements made therein are untrue. The term "falsely" has reference not to the contracts or tenor of the writing, or to the fact stated in the writing, but it implies that the paper or writing is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains.

37 C.J.S. *Forgery*, § 10 at 74 (1997) (footnotes omitted).

¶ 15. Finally, an A.L.R. annotation that surveyed decisions, concludes that "the better view, and that supported by the majority opinion, is that . . . the genuine making of an instrument for the purpose of defrauding does not constitute the crime of forgery." Annot. 41 A.L.R. 229, 231 (1926). As Justice Scalia observed in his dissent in *Moskal v. United States*, 498 U.S. 103, 129 (1990), " 'Majority opinion' is an understatement. The annotation lists 16 States and the

United States as supporting the view, and only 2 states (Kentucky and Tennessee) as opposing it." The two opposing states do not even include the term "falsely made" in their statutes. *Id.*

¶ 16. The effect of this rule can be better understood by some examples of what is not forgery. Perkins explains that if a person executes a deed with a warranty that the real estate is free and clear of encumbrances, even though the person knows the land is subject to a large mortgage, the deed is genuine. The contents of the deed are false, but it would not be forgery because the document is in fact a deed. The falsity is in its content, not in its execution. PERKINS, *supra*, ch. 4, § 8 at 345. Nor is it forgery to add mere surplusage to a document, such as putting in the name of a witness where none is required, or changing a memo on the back of a document which has no legal effect. 36 AM. JUR. 2D *Forgery* § 8 at 543 (2001).

¶ 17. In our case, Entringer purchased a $25 money order from the post office. She paid money. The post office in return gave her the money order. At that point the money order was as good as cash. Entringer then made the money order payable to the clerk of court. She listed her mother's name as the payer. However, the name of the payer had nothing to do with the genuineness of the execution of the money order. As the clerk testified, postal money orders are accepted even if they have no name listed as payer. Naming the payer is mere surplusage, as far as genuineness of execution is concerned. It does not constitute "falsely making" the money order.

¶ 18. The State relies on three cases in its argument. First it cites *State v. Czarnecki*, 2000 WI App 155, ¶ 4, 237 Wis. 2d 794, 615 N.W.2d 672, where the defendant was convicted of forgery and uttering a

forged writing after he endorsed checks with an assumed name. We held that the checks were falsely made when the defendant endorsed them using an assumed name because he "did not have a legitimate purpose for using his assumed name to endorse the checks." *Id.* at ¶ 12. We further held that when the defendant presented the check for deposit endorsed with the assumed name, "he took another step in furtherance of his plan to use the check as a means to defraud." *Id.* at ¶ 13. That made the endorsement a false act that satisfied the requirement of the uttering statute that the writing be falsely made. *See id.* The State contends the same rationale applies here.

¶ 19. However, there is a critical distinction between *Czarnecki* and this case. *Czarnecki* endorsed the checks. An endorsement is part of executing a check. Entringer, on the other hand, did not endorse the money order; it was executed when Entringer purchased it. She added information that was not necessary to the genuineness of the execution. Using the distinction of the case law, the information Entringer added related to content of the document, not its execution. Thus, she did not "falsely make" the money order.

¶ 20. The State also relies on *State v. LaRue*, 487 P.2d 255 (Wash. Ct. App. 1971). In that case, someone stole a Travelers Express personal money order from a business. LaRue tried to use the money order to purchase an item in a store. He wrote a name other than his own on the money order. LaRue claimed he could not have committed a forgery because the signature had no legal effect on the validity of the money order.

¶ 21. The Washington court said it would have agreed with *LaRue* under prior case law holding that "a

personal money order is 'akin' to a bank cashier's check and thus represents a direct bank obligation to pay a holder." *Id.* at 258. However, later case law has concluded that a personal money order is the equivalent of a personal check. *Id.* This would include, among other things, the right to stop payment. *Id.* As a result, the court concluded that the signature was the same as the signature of a drawer of a check and constituted a forgery. *Id.* at 258–59.

██

¶ 22. This case is different. First, a postal money order is different than a Travelers Express personal money order. Unlike the personal money order in *LaRue*, payment cannot be stopped on a postal money order. *See* O'Malley, Legal Aspects of Postal Money Orders, 84 Banking L.J. 471 (1967). In fact, a postal money order is not even a negotiable instrument. 11 AM. JUR. 2D *Bills and Notes* § 32 (1997); *Computer Works, Inc. v. CNA Ins. Cos.*, 757 P.2d 167, 168 (Colo. Ct. App. 1988). Thus, we conclude a postal money order is much more akin to a bank cashier's check and represents a direct obligation to pay a holder. As such, the signature of the payer has no effect on the genuineness of the money order.

¶ 23. Furthermore, in *LaRue* the store apparently insisted upon a signature and some identification. Here, the Clerk testified that money orders are accepted with any name or no name. While reliance is not an element of forgery or uttering, *see State v. Shea*, 221 Wis. 2d 418, 429, 585 N.W.2d 662 ( Ct. App. 1998), the Washington court commented that the store was entitled to believe the signature of the drawer was genuine.

¶ 24. Finally, Washington law is not binding on this court. We are not persuaded by the *LaRue* court's

analysis. It completely ignores a distinction which is critical in Wisconsin: genuineness of execution versus genuineness of content. Despite the personal money order's similarity to a check, the signature was not essential to its execution. Under Wisconsin law, the signature could not constitute a false making.

¶ 25. The third case the State cites is *Moskal* to illustrate how a false entry on a document may constitute a false making. *Moskal's* holding relies on its conclusion that falsely made encompasses genuine documents that are false in content. *Id.* at 104. However, this conclusion is directly contrary to Wisconsin law. As was explained earlier in this opinion, Wisconsin differentiates between false execution of a document and false contents of a document. The former is forgery; the latter is not. Further, *Moskal* relied on the legislative intent of 18 U.S.C. § 2314. The Court did not offer a view regarding its interpretation of the term "falsely made" in other statutes. *Id.* at 109 n.2.

¶ 26. WISCONSIN STAT. § 943.38 requires that false making relate to the genuineness of execution, not to the genuineness of content. Here, Entringer's use of her mother's name on a postal money order did not affect the money order's execution. Entringer's actions may have been a false representation within the contents of the money order, but that does not affect the genuineness of the money order itself. Consequently, the circuit court correctly dismissed the uttering a forged writing charge.

*By the Court.*—Order affirmed.