STATE of Wisconsin, Plaintiff-Respondent,

v.

Dalvell RICHARDSON, Defendant-Appellant.†

Court of Appeals

*No. 00–2129–CR. Submitted on briefs April 3, 2001.—Decided May 30, 2001.*

## 2001 WI App 152

(Also reported in 632 N.W.2d 84.)

†Petition to review denied.

_____

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William H. Ramsey*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J. Dalvell Richardson appeals from a judgment entered after he pled guilty to one count of armed robbery as party to a crime. He also appeals from an order denying his postconviction motion, which sought resentencing for an alleged breach of a plea agreement and claimed ineffective assistance of trial counsel for failing to object to the breach. Because the sentencing court's findings of fact in denying the motion were not clearly erroneous and its conclusion of law that no breach of the plea agreement occurred was reasonably based, we affirm.

## I. BACKGROUND

¶ 2. On October 16, 1998, Richardson and an accomplice, who is only partially identified in the

713

record, committed an armed robbery in a home located at 2228 North 40th Street. At the time of the incident, several adults and four minor children were present in the home. Pursuant to a plea agreement, Richardson agreed to plead guilty to the charge. In turn, the State agreed not to recommend any specific sentence at the time of sentencing. The State affirmatively indicated that it would leave the length of incarceration entirely up to the court.

¶ 3. During the sentencing hearing, the State iterated its position. The trial court sentenced Richardson to thirty-five years in prison. Richardson moved for resentencing. The basis for the motion was that despite having committed itself to taking no position as to the length of incarceration, the State "repeatedly suggested that a very lengthy sentence was appropriate." There was no hearing on the motion. In a written opinion, the sentencing court denied the motion for resentencing. Richardson now appeals.

## II. ANALYSIS

¶ 4. Richardson claims the prosecutor violated the terms of the plea agreement by making comments during the sentencing hearing that suggested to the court that a lengthy sentence was required. The trial court found that the prosecutor's comments did not constitute a breach of the plea agreement. We agree.

¶ 5. Whether a prosecutor violated the terms of a plea agreement will depend on the circumstances of every case. If there is a disputed question of fact as to whether the prosecutor violated the terms of the agreement, we shall give deference to the factual findings of the trial court unless they are clearly erroneous. *State v. Wills*, 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995).

If there are no disputed facts, the question is one of law to be reviewed independently. *Id.* If, on the other hand, there is both a disputed question of fact and a question of whether the facts establish a breach, then we must first review the facts under the clearly erroneous standard of review and then determine as a matter of law independently whether the prosecutor violated the terms of the plea agreement. *Id.* at 277–78.

¶ 6. At the sentencing stage of a criminal proceeding, pertinent factors relating to the defendant's character and behavior pattern cannot be immunized by a plea agreement between the defendant and the state. *Elias v. State*, 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980). A plea agreement that does not allow the sentencing court to be apprised of relevant information is void as against public policy. *State v. McQuay*, 154 Wis. 2d 116, 125–26, 452 N.W.2d 377 (1990).

¶ 7. Although what transpired at the sentencing hearing is not in dispute, the inferences drawn from the oral presentation of both the State and defense are disputed. Thus, we are presented, as was the postconviction motion court, with a record ripe for finding facts and reaching a conclusion of law, even though no motion hearing occurred.

¶ 8. The plea agreement, as entered in the record, reads:

> [DEFENSE COUNSEL]: . . . My client is willing to enter into a plea, based upon the negotiations being that [the prosecutor] will not recommend any specific sentence at the time of sentencing.
> THE COURT: [Prosecutor].
> [PROSECUTOR]: To be specific, the State is willing to leave the length of the incarceration entirely up to the Court, will not make any specific

numerical type of recommendation. It will just be incarceration and restitution and leaving all specifics to the Court.

¶ 9. Richardson argues that the following statements made by the prosecutor at the sentencing hearing constituted a breach of the plea agreement: "this could have been a multiple count situation," "this particular case is, if not the most serious case I've handled this year, it is certainly among the top two or three," "[t]his is one of the most serious non-fatal crimes that I have dealt with." Richardson contends these comments "constituted a forbidden 'end-run' around the agreement." We are not persuaded.

¶ 10. After reviewing the written arguments of both parties and the record itself, the sentencing court made the following findings of fact. At the time of sentencing, the contents of the criminal complaint and pre-sentence report could have justified a multi-count charge against Richardson. The court "gleaned this for itself." From its review of the record, the court knew the facts surrounding the offense and would have considered the totality of the facts "with or without the prosecutor's comment regarding the potential for a multiple count information." The court found that the State was not precluded by the agreement from setting forth its honest opinion of the nature of the offense. It found that the prosecutor's appraisal of the case was supported by a list of ten aggravating factors—most of which were already known to the court—and five mitigating factors. It further found that the prosecutor did not deviate from the terms of its plea agreement. The prosecutor did not make a specific recommendation, but left the amount of time to be served entirely up to the court.

¶ 11. Without full context, a review of the prosecutor's introductory sentencing remarks might very well lead one to conclude that the prosecutor was attempting an "end-run" around the intent of the plea agreement. This first blush reaction, however, is not warranted when we consider the remarks in their full context. A complete review of the sentencing transcript reveals that Richardson's defensive ploy was to divert attention to his unknown accomplice, and to deflect responsibility onto the accomplice as the mastermind because the accomplice knew the home was a drug house used by individuals with prior drug convictions and an easy mark. Viewed in this light, it is not unreasonable to conclude that the prosecutor's comments were intended only to keep the factors for sentencing in their proper perspective. When a party opens the door on a subject, he cannot complain if the opposing party offers evidence on the same subject to explain, counteract, or disprove the evidence. *United State v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985).

¶ 12. Further, the court found that the plea agreement did not prohibit the prosecutor from "setting forth its honest opinion of the nature of the offense, i.e. that it was one of the most serious armed robberies it had dealt with." The plea agreement indicated the State would not make a specific recommendation. The State did not. The comments that Richardson refers to as attempting an "end-run" around the agreement, taken in context, provided the trial court with relevant information, which cannot be immunized by a plea agreement or bargained away. *Elias*, 93 Wis. 2d at 285; *McQuay*, 154 Wis. 2d at 125–26.

██

¶ 13. In summary, we conclude that the sentencing court's findings of fact in its written decision

denying the postconviction motion are not clearly erroneous and provide a sufficient basis for its conclusion that no breach of the plea agreement occurred. Sequentially therefore, there was no instance of ineffective assistance of trial counsel.

*By the Court.*—Judgment and order affirmed.

¶ 14. SCHUDSON, J. *(dissenting).* There's much more to this story.

¶ 15. The prosecutor advised the court that, under a proposed plea agreement, it was offering Richardson either of two options:

> [T]he State . . . would either leave sentencing to the Court and not be specific as to length or . . . the State would recommend a range of time somewhere in the range of 20 to 30 years if Mr. Richardson wanted the State to be more specific. . . . [W]e're more than willing to take either of these two positions. . . .

Defense counsel, after conferring with Richardson, advised the court that Richardson was "willing to enter into a plea, based upon the negotiations being that [the prosecutor] will not recommend any specific sentence at the time of sentencing." The prosecutor then added:

> To be specific, the State is willing to leave the length of the incarceration entirely up to the Court, will not make any specific numerical type of recommendation. It will just be incarceration and restitution and leaving all specifics to the Court.

Thus, Richardson refused a plea agreement that would have allowed the State to recommend a range of twenty to thirty years in prison, but accepted an agreement leaving, in the prosecutor's words, "the length of the incarceration entirely up to the Court."

¶ 16. At sentencing, however, the prosecutor emphasized, "[T]his particular case is, if not the most serious case I've handled this year, . . . certainly among the top two or three." He then added, "This is one of the most serious non-fatal crimes that I have dealt with."

¶ 17. Most significantly, as revealed in the post-conviction motion submissions, the prosecutor (who had handled the plea proceedings), in his letter to defense counsel denying that he had breached the plea agreement, maintained that the plea agreement "most certainly did **not** 'limit the prosecutor's ability to present arguments supporting a lengthy prison term,' " as defense counsel had alleged in his letter to another prosecutor (who was then handling the postconviction proceedings). Additionally, in that same letter to defense counsel, the prosecutor (who handled the plea proceedings) maintained that "[p]ainting a vivid picture of just how awful a crime this was and how it related to the 'average robbery' was made even more necessary by the fact that Judge Gordon was relatively new to felony court and . . . had . . . handled relatively few, if any, of these types of cases."

¶ 18. The prosecutor's trial court declaration of the plea agreement cannot be reconciled with his post-conviction characterization of the agreement. The prosecutor initially represented that, under the agreement, the State would "leave the length of the incarceration entirely up to the Court." In his letter, however, the prosecutor claimed that the agreement "most certainly did **not** 'limit the prosecutor's ability to present arguments supporting a lengthy prison term.' " And, in his letter, the prosecutor candidly acknowledged what he perceived as the need, based on the judge's relative inexperience, to offer information that would help the judge understand that Richardson's

crime was far more serious than the " 'average robbery.' " Unquestionably, such comments countered the agreement to "leave the length of the incarceration entirely up to the Court."

¶ 19. Unquestionably, such comments urged the judge to order a sentence at or near the maximum end of the statutory range. And actually, on this point, there really is little if any dispute. After all, the prosecutor, quite understandably (given his view that the agreement did not limit his ability to "present arguments supporting a lengthy prison term"), offered extensive comments to guide what he considered an inexperienced judge toward a lengthy period of incarceration

¶ 20. The majority suggests that Richardson opened the door to the prosecutor's remarks. *See* Majority at ¶ 11. The record, however, in two totally obvious ways, reveals that he did not.

¶ 21. First, the prosecutor's comments *preceded* those from defense counsel and Richardson. Clearly, therefore, Richardson had not opened any door.

¶ 22. Second, even if we could pretend that the prosecutor's comments came after those of defense counsel or Richardson, the prosecutor's remarks were unrelated to the "defensive ploy" the majority claims as the basis for the prosecutor's response. Without any basis in the record, the majority asserts that "Richardson's defensive ploy was to divert attention to his unknown accomplice, and to deflect responsibility . . . ." Majority at ¶ 11. If that were so, the prosecutor perhaps could have offered information tightly tying *Richardson* to the crime, thus defeating the "defensive ploy." The prosecutor's remarks, however, do not even attempt to do that; they address the seriousness of the

crime without regard to the relative culpability of Richardson and his accomplice.[1]

¶ 23. "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement . . . . '[O]nce the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled.'" *State v. Smith*, 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997) (citations omitted). "When a prosecutor does not make the negotiated sentencing recommendation, that conduct constitutes a breach of the plea agreement." *Id.* at 272.

¶ 24. In this case, admittedly, the record allows for several interpretations of the exact parameters of the plea agreement and the prosecutor's comments. With considerable effort, perhaps, one could wrestle the record to the mat and possibly pin this sentencing at the outer edge. But why do so? After all, the inconsistency between the prosecutor's initial and postconviction representations reflect, at the very least, even *the prosecutor's* differing interpretations of the plea agreement.

¶ 25. The integrity of the plea agreement/sentencing process is essential to justice—for both defendants and the State. Preserving that integrity requires re-sentencing where, as here, the record reveals, at the very least, the substantial likelihood of a breach. Accordingly, I respectfully dissent.

---

[1] In fact, the prosecutor's remarks, if anything, do the opposite of what the majority maintains. The prosecutor emphasized, as one of ten aggravating factors, that Richardson, instead of cooperating, had "chosen instead to protect his accomplice and refuse to name his accomplice."