STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven A. HARVEY, Defendant-Appellant.†

Court of Appeals

*No. 2005AP103–CR. Submitted on briefs October 27, 2005.
—Decided January 4, 2006.*

2006 WI App 26

(Also reported in 710 N.W.2d 482.)

† Petition to review denied 4-10-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher W. Rose*, of *Rose & Rose* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Maura F.J. Whelan*, assistant attorney general.

Before Snyder, P.J., Nettesheim, J., and Daniel L. LaRocque, Reserve Judge.

¶ 1. NETTESHEIM, J. Steven A. Harvey appeals from judgments convicting him of third-degree

felony sexual assault and fourth-degree misdemeanor sexual assault, contrary to Wis. Stat. §§ 940.225(3) and 940.225(3m) (2003–04)[1] respectively. Harvey also appeals from a postconviction order denying reconsideration of the trial court's prior order rejecting his motion to withdraw his guilty pleas, denying his motion to withdraw his pleas postconviction, and denying his motion for sentence modification.

¶ 2. On appeal, Harvey contends that: (1) he was entitled to withdraw his guilty plea to the charge of third-degree sexual assault because the State failed to establish a factual basis for the sexual intercourse element of the charge; (2) he otherwise presented a "fair and just" reason entitling him to withdraw his guilty pleas prior to sentencing; (3) the State presented information at the sentencing hearing which circumvented its plea agreement to refrain from a sentencing recommendation; and (4) the trial court misused its sentencing discretion. Finding none of these arguments persuasive, we affirm the judgment of conviction and the postconviction order.

## BACKGROUND

¶ 3. Harvey was convicted after pleading guilty to third-degree sexual assault and fourth-degree sexual assault. The charges stemmed from a June 2003 incident in which Harvey allegedly followed a woman home one night and entered her home uninvited. Then, despite her protests and efforts to resist, he sexually assaulted her by groping and fondling her and by "very forcefully" touching her genital area with his hands and mouth. He also repeatedly made her put her hand on

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

his penis. The woman and Harvey are stepsiblings. Harvey does not deny that the event occurred, but maintains that it was consensual.

¶ 4. Harvey was charged in a four-count information as follows: Count 1, burglary pursuant to Wis. Stat. § 943.10(1m)(a), for the breaking and entering; Count 2, third-degree sexual assault pursuant to Wis. Stat. § 940.225(3), for an act of sexual intercourse by cunnilingus; and Counts 3 and 4, fourth-degree sexual assault pursuant to § 940.225(3m), for the contact of Harvey's hand to the victim's genital area and the forced contact of the victim's hand to Harvey's penis. The parties negotiated a plea agreement by which Harvey would plead guilty to third-degree sexual assault (Count 2) and fourth-degree sexual assault (Count 3), and the State would dismiss and read in the burglary (Count 1) and the further charge of fourth-degree sexual assault (Count 4). The plea agreement further provided that the State would be free to argue facts relevant to the sentence, but would not make any specific sentence recommendation.

¶ 5. At the plea hearing on August 4, 2004, the trial court questioned Harvey as to whether he clearly understood the charges to which he was pleading. As related to one of the issues on appeal, the court specifically ascertained Harvey's understanding that if he did not plead guilty to the third-degree sexual assault charge based on the act of cunnilingus, the State would have to prove beyond a reasonable doubt two elements: "[F]irst, that you had sexual intercourse with the victim . . . and that second . . . she did not consent to the sexual intercourse[.]" Harvey's counsel stated that he "went over in detail what they [the elements of the offenses] involved . . . and he understands for example for the third-degree, that it involves

statutory sexual intercourse, which in this case was oral . . . ." Harvey stated that he understood the definition and what the State would have to prove. Finally, Harvey acknowledged that he and his attorney had thoroughly reviewed the plea questionnaire and waiver of rights form and that he understood everything in them. After finding a factual basis for Harvey's pleas based on the criminal complaint and the evidence presented at the preliminary hearing, the trial court accepted Harvey's pleas, ordered a presentence investigation report, and set the matter for sentencing.

¶ 6. Two weeks before sentencing, Harvey changed counsel. Still presentence, his new counsel moved to withdraw Harvey's guilty pleas, alleging that Harvey had a "fair and just reason" to do so. Specifically, Harvey averred that he was innocent because the sexual conduct with which he was charged was consensual and that his innocence was supported by the results of a lie detector test. Harvey claimed he had been urged by his wife and his former attorney to plead guilty because there was a seventy-five percent chance he could avoid prison if he entered into a plea. After an evidentiary hearing, the trial court denied the motion.

¶ 7. At the sentencing hearing, the trial court permitted the victim, her fiancé, and her sister to make statements. Likewise, the court heard statements from Harvey's wife, mother, stepfather, and one of his co-workers. The court also stated that it had reviewed apparently favorable letters from Harvey's children. The presentence investigation report recommended that Harvey be given a withheld sentence and five to six years' probation supervision on the third-degree sexual assault conviction and nine months' county jail confinement without work release on the fourth-degree sexual

assault conviction. Per the plea agreement, the State did not make a specific sentencing recommendation.

¶ 8. The trial court imposed a bifurcated sentence of ten years' imprisonment (two years' confinement and eight years' extended supervision) on Count 3, the third-degree sexual assault conviction, and nine months' consecutive confinement in the county jail on Count 4, the fourth-degree sexual assault conviction. Postconviction, Harvey asked the trial court to reconsider the denial of his earlier motion to withdraw his pleas, or to now permit him to withdraw his pleas. Alternatively, Harvey sought a modification of his sentence. The trial court denied this motion. Harvey appeals. We will recite additional facts as necessary when we discuss the appellate issues.

## DENIAL OF MOTION TO
## WITHDRAW GUILTY PLEAS

1. Factual Basis for Third-Degree Sexual Assault—
Sexual Intercourse by Cunnilingus[2]

¶ 9. The information charged Harvey with third-degree sexual assault pursuant to Wis. Stat. § 940.225(3), which states in part, "Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony." Section 940.225(5)(c) defines "sexual intercourse" as including "cunnilingus." However, the statutes do not define cunnilingus.

¶ 10. The charge of third-degree sexual assault was based on Harvey's alleged act of nonconsensual cunnilingus against the victim. Harvey complains that

---

[2] Harvey does not challenge the factual basis for the fourth-degree sexual assault conviction.

the trial court erroneously denied his motion to withdraw his guilty plea to this charge because the State failed to establish a factual basis for the sexual intercourse element of third-degree sexual assault—specifically cunnilingus. Before accepting a guilty plea, the trial court must make such inquiry as satisfies it that the defendant in fact committed the crime charged. Wis. Stat. § 971.08(1)(b). The remedy for failure to establish a factual basis is plea withdrawal. *State v. Harrington*, 181 Wis. 2d 985, 989, 512 N.W.2d 261 (Ct. App. 1994). Unless it was clearly erroneous, we will uphold the trial court's determination that there existed a sufficient basis to accept the plea. *Id.*

¶ 11. Specifically, Harvey contends that the State failed to establish that his act of cunnilingus resulted in oral *stimulation* of the victim's clitoris or vulva. Harvey correctly argues that *State v. Childs*, 146 Wis. 2d 116, 120, 430 N.W.2d 353 (Ct. App. 1988), recites that cunnilingus is "the oral stimulation of the clitoris or vulva." The *Childs* definition, like its counterpart in Wis JI—Criminal 1200B, the current relevant jury instruction, derives from a standard dictionary. *See Childs*, 146 Wis. 2d at 120 and Wis JI—Criminal 1200B, n.3 (stating that the definition is from Webster's New Collegiate Dictionary). Harvey also looks to a standard dictionary to define "stimulation" as "to excite or arouse to action by some strong motive or persuasion." Harvey contends that, absent evidence of "stimulation," the factual basis established at the plea hearing demonstrated only sexual contact, not sexual intercourse. *See* Wis. Stat. § 940.225(5)(b)1.[3]

---

[3] Under Wis. Stat. § 940.255(5)(b)1. "sexual contact" means:

Intentional touching by the ... defendant, either directly or ... by the use of any body part ... of the complainant's ... intimate parts

¶ 12. The trial court rejected Harvey's request to withdrawal his guilty plea, ruling that the criminal complaint and the evidence presented at the preliminary hearing established a factual basis for the element of sexual intercourse by cunnilingus. Harvey does not challenge that the complaint and the evidence established that he placed his mouth on the victim's genital area. Indeed, he could not. Under the State's questioning at the preliminary hearing, the victim testified:

Q. Did he touch any of your—did he touch your genitals?

A. Yes; very forcefully.

Q. With what?

A. His hands, his mouth . . . .

Q. Now, when you said his mouth—I asked what part of your genitals were touched with what part. You said his hands and his mouth. Did his mouth actually make contact with your vagina?[4]

A. Yes.

---

if that intentional touching is either for the purpose of sexually degrading; or for the purpose of sexually humiliating the complainant or sexually arousing or gratifying the defendant . . . .

[4] This case illustrates the recurring problem of what we might call "anatomical approximation," often encountered when nonmedical people describe female genitalia. The vagina, an internal structure, is the canal that leads from the uterus to the external orifice (vulva). *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2528, 2567 (UNABR. 1976). While an act of cunnilingus might involve the victim's vagina, we commonly see prosecutors, defense attorneys, judges, victims and witnesses refer to the "vagina" when the evidence does not show involvement with that specific structure, but rather only with the victim's genital area. We urge all concerned to be more descriptively accurate in the future.

Harvey accurately states that this evidence does not show "oral stimulation" of the victim's clitoris or vulva as required by the jury instruction note and tacitly approved in *Childs*. The same can be said of the allegations in the criminal complaint.

¶ 13. The Criminal Jury Instructions Committee comprises highly qualified legal minds whose goal is to uniformly and accurately state the law. *State v. Gilbert*, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983), *modified on other grounds, State v. Magnuson*, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536. However, the Committee's pattern instructions are merely persuasive, not precedential, *State v. Olson*, 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661 (1993), and we are not duty-bound to accept the Committee's pronouncements. *See State v. Beets*, 124 Wis. 2d 372, 383 n.7, 369 N.W.2d 382 (1985).

¶ 14. Contrary to the Committee's definition of cunnilingus, we conclude that the statutory scheme of the sexual assault law does not require proof of "stimulation of the clitoris or vulva." We do so because the notion of "stimulation" of the victim offends the principles underpinning the sexual assault law. In *State v. Eisch*, 96 Wis. 2d 25, 37–38, 291 N.W.2d 800 (1980), the supreme court spoke to the purpose of the then recently enacted sexual assault law:

> The general legislative intent of the statutory revision should also be considered. We take judicial notice that the revision of the statutes originating in 1975 (S.B. 233), which found its place in the Laws of 1975 and 1977, was the result of a legislatively perceived need to broaden the protections afforded by what had previously been referred to as crimes against sexual morality. The new laws recognized that forcible sexual as-

234

saults constitute threats to life and bodily security. The legislature recognized that what had previously been considered as perversions when coupled with force constituted dangerous threats to life and bodily security.[5]

¶ 15. To require that an act of nonconsensual cunnilingus against a victim be accompanied by stimulation of the victim's clitoris or vulva flies in the face of this legislative change in attitudes about crimes of sexual assault. Such a requirement harkens back to a darker time when sexual assault was viewed as a crime of passion, not of violence. While an offender in a given case might seek stimulation when committing a sexual assault, the law should not require that the victim respond in kind as a required component of a sexual assault.

¶ 16. As noted, the Committee's definition of cunnilingus is drawn from WEBSTER's NEW COLLEGIATE DICTIONARY. Resort to a recognized dictionary is permitted to establish the ordinary and common meaning of a word. *Childs*, 146 Wis. 2d at 120. While the law commonly looks to a standard dictionary for guidance in defining a word in easily understood terms, such a source cannot always be relied upon, as Harvey does, to supply or explain legal nuances. Our focus must remain on ascertaining the *legal* definition consistent with the legislative intent.

¶ 17. A standard dictionary definition should not by default become the legal definition of a term if it

---

[5] The sexual assault statutes in the Criminal Code are part of WIS. STAT. ch. 940, titled "Life And Bodily Security" and are included under Subchapter II titled "Bodily Security."

unfairly or inaccurately states the law or misconveys the legislative intent. We conclude that a definition of cunnilingus that suggests the victim must be stimulated misrepresents the legislative intent to recognize sexual assault as a crime of violence and to protect victims of those crimes. Given the legal significance of the term "cunnilingus" in our sexual assault statute, we think a better resource is BLACK'S LAW DICTIONARY 380 (6th ed. 1990), which more neutrally defines cunnilingus as "[a]n act of sex committed with the mouth and the female sexual organ."[6]

¶ 18. However, our rejection of the Committee's definition of cunnilingus does not fully resolve this issue since, as we have observed, this definition met with at least tacit approval by the *Childs* court. However, we are not bound by the *Childs* case because it was not a cunnilingus case, a fact implicitly recognized by the current jury instruction. *See* WIS JI—CRIMINAL 1200B, n.3 & 4. Childs was convicted of sexual intercourse by forced fellatio against the victim contrary to WIS. STAT. § 940.225(2)(a). *Childs*, 146 Wis. 2d at 118. Childs claimed the trial court wrongly instructed the jury that "[f]ellatio, the oral stimulation of the penis, is sexual intercourse" because that instruction relieved the State of proving a statutory element of the crime, intrusion of his penis into the complainant's mouth. *Id.* at 119–20. After reciting the full text of the then-applicable jury instruction, which included the same definition of cunnilingus urged in this case, the court of appeals concluded that the ordinary and common meaning of fellatio includes oral stimulation of the

---

[6] Subsequent editions of BLACK'S LAW DICTIONARY do not define cunnilingus.

236

penis without penetration into the mouth, and the jury thus had been properly instructed as to the meaning of fellatio. *Id.* at 120.

¶ 19. The court of appeals' reference to cunnilingus in *Childs* occurred only because that term and its definition were part of the larger instruction that also addressed fellatio, which was the conduct at issue in the case. Thus, the court's reference to cunnilingus was factually irrelevant to the issue and unnecessary to the analysis and holding of the case. As such, the reference was dicta and we are not bound by such commentary. *See State v. Sartin*, 200 Wis. 2d 47, 60 and n.7, 546 N.W.2d 449 (1996) (stating that language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it is dicta and is not controlling).

¶ 20. Finally, we take note that other states have considered this issue and arrived at a definition of cunnilingus consistent with our determination.[7] For example, in *Beltz v. State*, 980 P.2d 474, 477 (Alaska Ct. App. 1999), the court held that "oral-genital contact, no matter what the intent or the result, is sufficient to prove cunnilingus or fellatio." The defendant in *Beltz* argued that the jury was misinstructed concerning the definitions of fellatio and cunnilingus because the jury was not told that these forms of "sexual penetration" required proof of stimulation or sexual satisfaction. *Id.* at 476. The court rejected the defendant's suggestion that the legislature intended proof that either party sought or obtained sexual stimulation. *Id.* at 477. The

[7] We may look to other jurisdictions for persuasive authority where there are no Wisconsin cases directly on point. *See State v. Frey*, 178 Wis. 2d 729, 740, 505 N.W.2d 786 (Ct. App. 1993).

court specifically noted that even those jurisdictions that define cunnilingus and fellatio using the term stimulation "tend to construe 'stimulation' broadly, so that any oral-genital contact qualifies as 'cunnilingus' or 'fellatio.' " *Id.* at 477 n.14; *see also State v. Brown*, 405 N.W.2d 600, 607 (Neb. 1987) (where the court chose not "to quibble . . . over the word 'stimulation' contained in the definitions of cunnilingus . . . ." (citation omitted)).

¶ 21. The complaint and the undisputed evidence presented at the preliminary hearing demonstrated that Harvey performed an act of nonconsensual cunnilingus by placing his mouth on the victim's genital area. Neither the letter nor the spirit of current law requires that the victim's clitoris or vulva be stimulated as the result of such contact, or that the victim experience stimulation in any other manner. Whether or not Harvey's argument to the contrary has any arguable merit, we conclude that to endorse it would yield a result ultimately offensive to the articulated principles of Wisconsin's sexual assault law. We refuse to do so. The trial court correctly found that the criminal complaint and the preliminary hearing evidence established a factual basis in support of the element of sexual intercourse by cunnilingus pursuant to Wis. Stat. § 940.255(3).

### 2. "Fair and Just Reason"

¶ 22. Apart from the foregoing issue, Harvey argues that he otherwise established a "fair and just reason" for the withdrawal of his guilty pleas. Presentence, Harvey moved to withdraw his guilty pleas, claiming that the sexual conduct was consensual and that a polygraph test corroborated his innocence. He also contended that he never wanted to plead guilty but

was convinced to do so by his wife and his first attorney so as to avoid prison. He revives these arguments here to no avail.

**[7, 8]**

¶ 23. A defendant seeking to withdraw his or her plea must sufficiently show a "fair and just reason." *State v. Leitner,* 2001 WI App 172, ¶ 24, 247 Wis. 2d 195, 633 N.W.2d 207, *aff'd,* 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341. "Fair and just" means some adequate reason for the defendant's change of heart other than the desire to have a trial. *Leitner,* 247 Wis. 2d 195, ¶ 25. An assertion of innocence, while important, is not dispositive. *Id.*

■■■■■

¶ 24. Whether to permit a plea withdrawal rests within the trial court's discretion. *See id.,* ¶ 24. Although plea withdrawal before sentencing should be liberally granted, it is not automatic. *Id.* We will sustain the trial court's discretionary determination if the court reached a reasonable conclusion based on the correct legal standard and a logical interpretation of the facts. *State v. Kivioja,* 225 Wis. 2d 271, 284, 592 N.W.2d 220 (1999).

■■■

¶ 25. The term "fair and just reason" does not lend itself to scientific exactness, but has developed over time from numerous appellate cases. *State v. Shanks,* 152 Wis. 2d 284, 290, 448 N.W.2d 264 (Ct. App. 1989). Reasons for permitting plea withdrawal prior to sentencing include coercion on the part of trial counsel or a genuine misunderstanding either of the plea consequences, or of the charges. *Id.*

¶ 26. Harvey does not contend that he was coerced or that he misunderstood either the plea bargain

239

or any elements of the crimes charged. Rather, he equates his case to *Libke v. State*, 60 Wis. 2d 121, 208 N.W.2d 331 (1973). There, Libke entered his guilty pleas while he was represented by appointed counsel. *Id.* at 122. After expressing dissatisfaction with that counsel, Libke received new counsel who moved for permission to withdraw the pleas on grounds that they had been induced by Libke's failure to fully understand the circumstances. *Id.* At the motion hearing, Libke testified that his first counsel had talked him into making a plea he did not want to make. *Id.* at 122–23. The trial court denied his motion. *Id.* at 123. The supreme court reversed, concluding that Libke's assertion that he had pled guilty out of confusion because things were happening "too darn fast" adequately demonstrated a "fair and just reason" for plea withdrawal. *Id.* at 129.

¶ 27. Harvey makes no real claim on appeal that events in this case confused or outpaced him, however, and we see no other similarities between his situation and *Libke* sufficient to warrant second-guessing the trial court's exercise of discretion. Harvey, his wife and his first attorney all testified at the hearing on Harvey's motion to withdraw his pleas. The gist of Harvey's testimony was two-fold: he was innocent because the sexual encounter was consensual, but he pled guilty because he wanted to maximize his chances of avoiding or reducing prison time. Both Harvey's wife and first attorney also testified that Harvey insisted he was innocent, but that they urged him to take the pleas based on the attorney's estimation that pleading would yield a better chance of avoiding prison.

¶ 28. The trial court found that Harvey's assertions of innocence were due only to his claims that the sexual conduct was consensual, not that it did not happen or because "there was any confusion about what

cunnilingus may mean or that intercourse includes touching the mouth to the vagina." The court further found that the change of attorneys had brought with it a change of professional opinion as to Harvey's chances at trial. The court also observed that Harvey had ample time to reconsider his decision, yet waited until "literally the eve of the sentencing hearing" to consult a second attorney. The court also found that Harvey "understood exactly what was happening" and that he could have indicated at the plea hearing that he did not want to go through with the guilty pleas, but did not. After verifying that Harvey understood all elements of the charges, the trial court found incredible any claim of confusion on Harvey's part, finding instead that Harvey's guilty pleas were the result of his own free, knowing and voluntary decision. The trial court concluded that Harvey's desire to withdraw his pleas based on his claim of innocence and on a change of heart about his odds at trial did not amount to a "fair and just reason."

¶ 29. A trial court makes numerous credibility assessments crucial to a determination of whether the evidence offered was a "fair and just reason" supporting withdrawal, and we must accept them. *See Kivioja,* 225 Wis. 2d at 289–91. We conclude that the trial court reached a reasonable conclusion based on the correct legal standard and a logical interpretation of the facts. It observed, correctly so, that Harvey's pleas were free, knowing and voluntary. The trial court concluded that Harvey's desire to withdraw his pleas was connected not to a misapprehension of the pleas or the plea process, but to his claim of innocence and the second opinion suggesting different odds of avoiding prison. A recalculation of one's chances at trial, without more, is

not a fair and just reason. *See Leitner,* 247 Wis. 2d 195, ¶ 25. And while an assertion of innocence generally is an important factor, *id.*, the facts found by the trial court here eviscerate that claim. We see no erroneous exercise of discretion.

## SENTENCING ISSUES

### 1. Alleged Breach of Plea Agreement

¶ 30. Harvey argues that the State materially and substantially breached the plea agreement by presenting statements of the victim and people supportive of her at the sentencing hearing. He contends these statements amounted to an "end-run" by the State around its agreement not to make any sentencing recommendations. *See State v. Hanson,* 2000 WI App 10, ¶ 24, 232 Wis. 2d 291, 606 N.W.2d 278.

¶ 31. When reviewing an alleged breach of a plea agreement, the terms of the agreement and the historical facts of the State's conduct are questions of fact. *State v. Williams,* 2002 WI 1, ¶ 2, 249 Wis. 2d 492, 637 N.W.2d 733. Where, as here, the facts are undisputed on appeal, the question is one of law to be reviewed de novo. *See State v. Wills,* 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995). Whether the State's conduct constitutes a breach of the plea agreement and, if so, whether the breach is material and substantial are questions of law. *Williams,* 249 Wis. 2d 492, ¶ 2. A breach is material and substantial when it defeats the benefit for which the accused bargained. *Id.,* ¶ 38.

¶ 32. We agree with Harvey that "end-runs" around plea agreements, like explicit repudiations of them, are prohibited. *See Hanson,* 232 Wis. 2d 291,

¶ 24. In other words, the State may not accomplish through indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended. *Id.*

¶ 33. Because the State's conduct at the sentencing is central to Harvey's challenge, we recite additional facts in some detail to flesh out this appellate issue. The terms of the plea agreement pertaining to this issue are not in dispute: the State was free to argue relevant facts at sentencing, but agreed not to make any specific sentencing recommendation. The historical facts of the State's conduct at the sentencing similarly are undisputed. The trial court opened the sentencing hearing with a recitation of the charges to which Harvey had pled guilty and ascertained that it understood the terms to which the parties had agreed. The court then asked whether the victim or any member of her family wanted to make a statement. The State responded that the victim, her sister and the victim's "significant other/fiancé" wished to address the court.

¶ 34. The victim's fiancé spoke first, under questioning by the trial court. During the course of this exchange, the fiancé said, "The maximum sentence in and of itself doesn't seem harsh enough." After the court thanked him for his statement, the State remarked, "Judge, I would ask [the fiancé] to also address [the victim's] demeanor and what [he] saw and heard of her when [he] got home that night." Harvey objected that permitting the State to ask questions would be going beyond arguing facts and circumstances of the offense. Harvey contended that the State was "using other witnesses to ask questions and bolster the case." The trial court overruled the objection on grounds that the questioning was relevant to a determination of consent,

would assist in the sentencing decision, and did not run afoul of the plea agreement. The State then put various questions to the fiancé and Harvey's counsel followed up with questions of his own.[8]

¶ 35. The sentencing hearing next proceeded with the statement of the victim's sister.

> THE COURT: .... Your next witness.

> [ASSISTANT DISTRICT ATTORNEY]: Corrina (Phon.) Skinner.

> THE COURT: Ma'am, would you state your name for the record?

> CORRINA SKINNER: Corrina Skinner.

> [DEFENSE COUNSEL]: Again, Judge, if the questioning is going to come from the state, I'm making the same objection I did earlier [regarding questioning by the State].

> THE COURT: I will preserve your objection. And if there is any specific thing that is said that I think violates the plea agreement or you think violates it in a different way from what you've already argued, then raise it or I'll raise it.

> [DEFENSE COUNSEL]: All right.

> THE COURT: But other than that, I will stand by the ruling I made.

---

[8] The persons who gave statements at the sentencing were not sworn as witnesses and, for the most part, presented narrative statements in response to questions by the trial court and the attorneys. Thus, we hesitate to label these persons as "witnesses." For the same reasons, we do not view the questioning and answering process as the equivalent of formal "direct" and "cross" examination.

[ASSISTANT DISTRICT ATTORNEY]: Judge, I want to make it very clear, the only prompts I've made to any of these witnesses is factually. I am not encouraging them to make any sort of recommendation at the state's behest. I'm absolutely not making any penalty recommendation. The only questions and conversations we have had are regarding factual issues.

THE COURT: Very well. Corrina, go ahead.

¶ 36. Skinner then presented a narrative statement, offering her perspective of the effect that Harvey's assault had on her sister and, given the stepsibling relationship, on the family as a whole. She also asked the court to "consider the maximum penalty." The victim then addressed the court in similar fashion and asked for "the maximum sentencing possible on both counts."

¶ 37. The State then offered "a few other factual matters" it wished to bring to the trial court's attention. Those matters included evidence unfavorable to Harvey that the State would have introduced at trial. At this juncture, Harvey again objected on grounds that (1) the State's commentary exceeded the bounds of factual argument and (2) the witnesses "were called as the state's witnesses, and they all made a recommendation to the court for a sentence. That's indirectly doing what the state can't do directly, which is make a sentencing recommendation . . . ." The trial court disagreed with Harvey, noting that, just as it had received letters from Harvey's children asking for mercy in sentencing their father, the victim's family members were equally entitled to voice their opinions regarding sentencing.

¶ 38. Once again, the State stressed that it was not urging the trial court to adopt the recommendations made by any of the witnesses:

And just one final comment on the victim, her sister, and her fiancé making a statement. I think that I would be violating her constitutional rights to try and preclude her from making any statement. And I will reiterate, emphasize, underline, italicize that I am not asking the court to adopt her recommendation, [the fiancé's], or [the victim's sister's].

I'm not asking the court to adopt the presentence recommendations. I'm not asking the court to exceed that recommendation or to go lower than it was . . . in the presentence report. I am not making any recommendation to the court at all.

¶ 39. Harvey argues that the State's affirmation of the plea agreement in this fashion could not overcome the State's "covert message" conveyed through Skinner that it, in fact, supported a severe sentence. Harvey contends that the State's "adopting the opinion of Corinna Skinner . . . by calling her as a state's witness," and by describing unfavorable evidence materially and substantially—albeit indirectly—breached the pact not to offer a sentencing recommendation. We are not persuaded.

¶ 40. We first disagree that the State breached the plea agreement by going beyond factual argument with its comments about evidence it would have introduced had there been a trial. Harvey's sole defense was that the sex was consensual. The State simply brought to the trial court's attention evidence that would refute that claim. The evidence included summaries of testimony witnesses would offer regarding telephone calls the victim and/or her fiancé allegedly had made shortly after the assault occurred, and regarding other instances of Harvey's sexual abuse of the victim. A party who opens the door on a subject cannot complain if the

246

opposing party offers evidence on the same subject to explain, counteract, or disprove the evidence. *State v. Richardson*, 2001 WI App 152, ¶ 11, 246 Wis. 2d 711, 632 N.W.2d 84. Moreover, the plea agreement expressly permitted the State to present facts relevant to the sentence. The only bar was that the State could not make a *specific* sentence recommendation. The information provided by the State was in keeping with its pledge under the plea agreement.

¶ 41. We also disagree with Harvey that Skinner's role at the sentencing was as a "state's witness" and that her statement amounted to an "end-run" or in any way rose to the level of a material and substantial breach of the plea agreement. While Skinner would have been a "state's witness" had there been a trial, in the context of this sentencing proceeding, she was, more accurately, the victim's witness. The trial court asked whether the victim or any member of her family wished to make a statement, and the prosecutor simply called Skinner to come forward. Defense counsel then objected to any questioning by the State, and the court immediately reassured defense counsel that it would be vigilant against violations of the agreement. The State underscored that it in no way was encouraging Skinner, or others, to make any sort of penalty recommendation. In our view, both the trial court and the State demonstrated an exemplary effort to honor the plea agreement.

¶ 42. We reject Harvey's argument on another basis as well. As the trial court aptly noted, Harvey's objections to statements by the victim's witnesses in essence asked the trial court to silence the victim and/or her family. The victim and her family members merely were afforded the same opportunity to speak as was offered, and accepted, by Harvey's family. Moreover, a

victim of a crime has an absolute right to make a statement at sentencing, and it is within the trial court's discretion to "allow any other person to make or submit a statement" as long as the statement is relevant to the sentence. WIS. STAT. § 972.14(3)(a). Similarly, the "Basic bill of rights for victims and witnesses" statute guarantees a victim the right "[t]o provide statements concerning sentencing" and the right "[t]o have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim and have the information considered by the court." WIS. STAT. § 950.04(1v)(m) and (pm). Finally, we observe that WIS. STAT. § 950.11 provides for a forfeiture penalty against a public official who intentionally fails to provide a right specified under § 950.04(1v).

■■■

¶ 43. Skinner's statement offered the very kind of sentencing information contemplated by WIS. STAT. § 950.04(1v)(m) and (pm).[9] Skinner related that her sister had to move from a house she loved because of the memories associated with the assault and that her sister now is fearful, sometimes telephoning Skinner because she "thinks she hears things, and she's afraid that someone is in her apartment." Skinner stated that because the actions of Harvey, their stepbrother, "really had serious repercussions on the family as a whole," such that "my sister and I have basically lost our family," she was asking the court to consider giving the maximum penalty. Courts are encouraged to consider the rights and interests of the public when imposing

[9] The same can be said for the information provided by the victim's fiancé.

sentence. *State v. Johnson*, 158 Wis. 2d 458, 465, 463 N.W.2d 352 (Ct. App. 1990).

¶ 44. We disagree that Skinner's narrative intruded into the forbidden realm of a State-endorsed sentencing recommendation. We commend the State for its prompt and strenuous disavowal of any connection with not only Skinner's comments and sentencing request, but also those of the victim and her fiancé. We also commend the trial court for superintending the proceeding to assure that the State complied with the plea agreement. We see no erroneous exercise of discretion.

2. Alleged Erroneous Exercise of Sentencing Discretion

¶ 45. The trial court sentenced Harvey to a ten-year term on the third-degree sexual assault conviction, consisting of two years' initial confinement followed by eight years' extended supervision. The court also sentenced Harvey to nine months of consecutive county jail confinement on the fourth-degree sexual assault conviction. On appeal, Harvey challenges only the prison confinement portion of the sentence on the third-degree sexual assault conviction.

¶ 46. Our review on appeal is limited to determining whether the trial court erroneously exercised its discretion. *State v. Gallion*, 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197. Discretion is erroneously exercised when sentencing is based on clearly irrelevant or improper factors. *Id.* This court follows a strong and consistent policy against interfering with the sentencing discretion of the court and indulges a strong presumption that the sentencing court acted reasonably. *Id.*, ¶ 18. The defendant bears the burden of showing

some unreasonable or unjustified basis for the sentence imposed. *State v. Mata*, 2001 WI App 184, ¶ 13, 247 Wis. 2d 1, 632 N.W.2d 872.

¶ 47. Harvey correctly states *Gallion's* teaching that probation should be considered as the first sentencing alternative. *Gallion*, 270 Wis. 2d 535, ¶ 25. Here, the trial court expressly addressed probation. Nearly ten pages of the sentencing transcript are devoted to evaluating the factors a court must consider in fashioning a sentence. *See id.*, ¶ 43 n.11. The court specifically noted Harvey's work ethic, his helpfulness to his elderly parents, and the effect imprisonment would have on Harvey's wife and children. The court nonetheless found that several factors weighed in favor of a prison sentence: Harvey's "very high" level of culpability, the aggravated nature of the offense, his high need for rehabilitative control, and the fact that the public is "generally horrified" by the idea of "an unwanted stranger" entering a woman's house at night and committing a sexual assault. In sum, the court concluded that probation would unduly depreciate the offense. Moreover, we take note that the court considered and rejected the requests for a maximum sentence registered by the victim and the others who spoke on her behalf.

¶ 48. Probation should be the disposition unless confinement is necessary to protect the public, the offender needs correctional treatment available only in confinement, or probation would unduly depreciate the seriousness of the offense. *Id.*, ¶ 44. Of these factors, only the need for treatment in confinement gave the trial court some pause. But since the rule is stated in the disjunctive, all factors need not be satisfied. *See*

*State v. Schumacher,* 144 Wis. 2d 388, 401, 424 N.W.2d 672 (1988) (applying the principle that where two statutory approaches are stated in the disjunctive, either approach may be employed). The court sufficiently explained the rationale underlying the bifurcated sentence and how the sentence would advance the specified objectives. *See Gallion,* 270 Wis. 2d 535, ¶ 45. We see no erroneous exercise of discretion.

## CONCLUSION

¶ 49. We hold that the criminal act of sexual intercourse by cunnilingus does not require stimulation of the victim's clitoris or vulva, but requires only oral contact with the victim's genital area. The criminal complaint and the preliminary hearing evidence established a factual basis for such oral-genital contact, and therefore Harvey was not entitled to withdraw his guilty plea to this charge. We further hold that Harvey did not otherwise establish a "fair and just reason" for withdrawal of his pleas.

¶ 50. We also reject Harvey's argument that the information presented by the victim and others on her behalf at the sentencing violated the State's promise under the plea agreement to not make a specific sentencing recommendation. Finally, we hold that the trial court did not misuse its sentencing discretion.

*By the Court.*—Judgments and order affirmed.