STATE of Wisconsin, Plaintiff-Respondent,

v.

Roy Lee RITTMAN, Defendant-Appellant.†

Court of Appeals

*No. 2009AP708–CR. Submitted on briefs February 2, 2010. —Decided February 23, 2010.*

2010 WI App 41

(Also reported in 781 N.W.2d 545.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kathleen M. Quinn* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael J. Losse*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Roy Lee Rittman appeals the judgment entered after the trial court found him guilty in a

bench trial of robbery where the victim reasonably believed that the robber was armed with a dangerous weapon.[1] *See* Wis. Stat. § 943.32(1) & (2). Rittman contends that there was not enough evidence to support the finding of guilt because he did not: (1) display either a dangerous weapon or anything that could be perceived as a dangerous weapon, or (2) say that he had one. We disagree and affirm.

## I.

¶ 2. As material to this appeal, Rittman does not dispute the testimony of the bank teller whom he robbed. Rather, as more fully discussed in Part II, he contends that he was not guilty of the crime of which he was convicted.

¶ 3. The teller testified that Rittman walked quickly into her bank and over to her station. Although she knew on sight between ninety to ninety-five percent of the bank's customers, she did not recognize Rittman as one of them. Having "been involved in a few" robberies before, this alerted her to a possible threat. She was correct because Rittman handed her a note with his right hand that said: "Put all money from drawer on counter quietly and quickly. No one gets hurt." He had a cell phone in his left hand, and put his right hand in his pocket after he gave her the note. The teller testified at trial as follows:

> A. His right hand had passed me the note, but then it disappeared below the [teller] station into his — he had on sweats. Down into his pocket or —

---

[1] Roy Lee Rittman was convicted of three robberies. This appeal, however, only concerns one robbery even though the notice of appeal references all three.

Q. When you saw his hand go into the pocket, what were you thinking at that time?

A. I didn't know what he had in that pocket, but I didn't want to find out either.

Q. When you say you "didn't want to find out," did you have any ideas of what you thought might have been in there?

A. Yes.

Q. What was that?

A. I was afraid he had some type of weapon because he was definitely intimidating and threatening by what he was doing.

Q. Specifically what was he doing with that hand?

A. He reached into his — reached into his pocket.

Q. Did you think he had a weapon in the pocket?

A. I was pretty sure there was probably a weapon.

As a result, the teller said that she warned a co-worker at the adjoining teller station to "get down" "so she wouldn't get hurt." She also "gave [Rittman] the money as quick as I could. I just grabbed and placed it on the counter. Like I said[,] I just wanted this to end as quickly as possible." Rittman took the money and left the bank. Before he left, however, he warned the teller not to interfere with his escape: He "[t]old me to get down as he exited the bank and nobody would get hurt if nobody followed him or didn't do anything."

¶ 4. In finding Rittman guilty, the trial court recognized that "there was no gun that was produced. There was no weapon, no screwdriver, no knife, no pipe, no anything that was produced by the perpetrator

during the course of these events." Nevertheless, the trial court concluded that the State had proven that the teller reasonably believed that the defendant was armed with a dangerous weapon when he robbed the bank.

## II.

¶ 5. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–758 (1990), recounts the appropriate standard of review when we are asked to determine whether there is sufficient evidence to support a conviction:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt . . . . If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

Critically, reasonable inferences must also be given to circumstantial evidence because it "is oftentimes stronger and more satisfactory than direct evidence." *Id.*, 153 Wis. 2d at 501, 451 N.W.2d at 755. Whether the statute is satisfied by the evidence is, however, an issue of law that we review *de novo. See State v. Turnpaugh*, 2007 WI App 222, ¶ 2, 305 Wis. 2d 722, 725, 741 N.W.2d 488, 490.

¶ 6. Wisconsin Stat. § 943.32, the statute governing Rittman's conviction, provides:

**(1)** Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class E felony:

(a) By using force against the person of the owner with intent thereby to overcome his or her physical resistance or physical power of resistance to the taking or carrying away of the property; or

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2) Whoever violates sub. (1) *by* use or *threat of use of a dangerous weapon,* a device or container described under s. 941.26(4)(a) or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon or such a device or container is guilty of a Class C felony.

(3) In this section "owner" means a person in possession of property whether the person's possession is lawful or unlawful.

(Emphasis added.) " 'Dangerous weapon' means," *inter alia,* "any firearm, whether loaded or unloaded; any device designed as a weapon and capable of producing death or great bodily harm . . . or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." WIS. STAT. § 939.22(10). Rittman was convicted of running afoul of subsection (2), and was thus guilty of a Class C felony rather than the Class E felony reserved for those who violate only subsection (1).

278

¶ 7. The key to a conviction under WIS. STAT. § 943.32(2) is whether the victim reasonably believed that he or she was threatened with a dangerous weapon even though he or she did not see *anything* that was perceived as a weapon. *State v. Witkowski*, 143 Wis. 2d 216, 219, 420 N.W.2d 420, 421 (Ct. App. 1988) ("If the victim's belief that the defendant was armed was reasonable, that is enough.").

¶ 8. In *Witkowski*, the defendant told the victim that he had a gun, but did not show any weapon or anything that the victim might perceive to be a weapon, and the defendant was not armed. *Id.*, 143 Wis. 2d at 218, 420 N.W.2d at 421. Nevertheless, *Witkowski* held "that a victim could reasonably believe from the robber's verbal representation alone that he or she was armed," and that "the reasonableness of the victim's belief depends on the circumstances of the individual case; and that is true whether the robber makes a verbal representation alone, or whether the representation is accompanied by conduct or other physical evidence that he or she is in fact armed." *Id.*, 143 Wis. 2d at 221–222, 420 N.W.2d at 422.

¶ 9. Here, Rittman made a "verbal representation" that he had something with which he would "hurt" the teller unless she succumbed to the robbery—that is, gave him the money he demanded and did not impede his escape. This "verbal representation" was reinforced when Rittman put his hand into his pocket immediately after he gave her the note. Further, when Rittman left the bank with his loot he warned the teller to "get down" and that someone "would get hurt" if anyone tried to stop him. The weapon most capable of hurting someone at a distance is a gun.

¶ 10. The statutes tell us in what is mostly a tautology that: " 'Reasonably believes' means that the actor believes that a certain fact situation exists and such belief under the circumstances is reasonable even though erroneous." WIS. STAT. § 939.22(32). In applying "reasonable belief" to the armed-robbery statute, *Witkowski* explains, as we have seen, that courts must consider "the circumstances of the individual case." *Witkowski*, 143 Wis. 2d at 222, 420 N.W.2d at 422. Although Rittman tends to generalize the trial court's finding of guilt by pointing out that the bank teller's earlier involvement in bank holdups would make "understandable" "her belief that any bank robber is likely armed," there is much more in this case than the mere overlay of experience:

- Rittman's note threatening harm;

- his putting his only free hand in his pocket rather than keeping it out to scoop up the money he demanded;

- his threat of harm if anyone tried to stop his getaway; and

- his order to the teller to get down as he was escaping.

All of this combined to give the teller a reasonable belief that Rittman had a dangerous weapon with which he could "hurt" her if she did not do what he demanded. There was no need for the note to use the word "gun" or "bomb" to have the teller reasonably believe that she could be "hurt," as the note threatened. Certainly, it would have been foolhardy for her to say to Rittman that she did not believe he *could* seriously hurt her because she did not see a gun and he did not specifically *say* he had one.

¶ 11. The note and the other circumstances were enough to satisfy the requirements that: (1) the teller believed that Rittman was armed with a dangerous weapon; and (2) her belief was reasonable. Under our *de novo* review of the statute, we agree with the trial court that there was sufficient evidence to prove beyond a reasonable doubt that Rittman violated WIS. STAT. § 943.32(1) & (2).[2] Thus, we affirm.

*By the Court.*—Judgment affirmed.

[2] Rittman contends that the evidence did not satisfy what WIS JI–CRIMINAL 1480A sets as the fifth element of a violation of WIS. Stat. § 943.32 (1) & (2), namely that: "At the time of the taking or carrying away, the defendant used or threatened to use an article used or fashioned in a manner to lead *(name)* reasonably to believe it was capable of producing death or great bodily harm." (Footnotes omitted.) We are not, of course, bound by either the pattern instructions or the accompanying notes. *See State v. Harvey*, 2006 WI App 26, ¶ 13, 289 Wis. 2d 222, 234, 710 N.W.2d 482, 487–488. But Rittman's citation to and reliance on WIS JI–CRIMINAL 1480A is misleading because Comment 1 to that pattern instruction advises: "If the case involves 'use or threat of use of a dangerous weapon,' Wis JI–Criminal 1480 should be used." In that situation, WIS JI–CRIMINAL 1480 recognizes, as we hold here, that the fifth element of a violation of WIS. Stat. § 943.32 (1) & (2) "does not require that a defendant actually display or possess a dangerous weapon. It is sufficient if the victim reasonably believed defendant had a dangerous weapon at the time of the threat. Whether the victim reasonably believed that the defendant was armed with a dangerous weapon is to be determined from the standpoint of the victim at the time of the alleged offense. The standard is what a person of ordinary intelligence and prudence would have believed under the circumstances that existed at that time." (Footnote omitted.)